UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SUSAN McCARTHY, | : | Civil Action No.  15-cv-1468 |
|  | : |  |
| *Plaintiff*, | : |  |
|  | : |  |
| - against - | : |  |
|  | : |  |
| ROOSEVELT UNION FREE SCHOOL DISTRICT; | : |  |
| DEBORAH L. WORTHAM, Individually and in her | : |  |
| Official Capacity; CLYDE BRASWELL, | : |  |
| Individually and in his Official Capacity; EDITH | : |  |
| L. HIGGINS, Individually and in her Official | : |  |
| Capacity; Roosevelt Union Free School District | : |  |
| Employees JOHN DOE 1-10 (the name "John | : |  |
| Doe" being fictitious, as the true names are | : | **VERIFIED COMPLAINT** |
| presently unknown); COUNTY OF NASSAU; | : |  |
| NASSAU COUNTY POLICE DEPARTMENT; | : |  |
| POLICE OFFICER JOSEPH STASSI, Individually | : |  |
| and in his Official Capacity; POLICE OFFICER | : |  |
| MONIQUE AMODEO, Individually and in her | : |  |
| Official Capacity; MEDIC MATTHEW FIELD, | : |  |
| Individually and in his Official Capacity; Nassau | : |  |
| County Employees JOHN DOE 11-20  (the name | : |  |
| "John Doe" being fictitious, as the true names | : |  |
| are presently unknown), | : |  |
|  | : |  |
| *Defendants*. | : | Trial by Jury |
|  | : |  |

Plaintiff, SUSAN McCARTHY, by and through her attorneys, Wolin & Wolin, complaining

of the defendants, ROOSEVELT UNION FREE SCHOOL DISTRICT; DEBORAH L. WORTHAM,

Individually and in her Official Capacity; CLYDE BRASWELL, Individually and in his Official

Capacity; EDITH L. HIGGINS, Individually and in her Official Capacity; Roosevelt Union Free

School District Employees JOHN DOE 1-10 (the name "John Doe" being fictitious, as the true

names are presently unknown); COUNTY OF NASSAU; NASSAU COUNTY POLICE

DEPARTMENT; POLICE OFFICER JOSEPH STASSI, Individually and in his Official Capacity; POLICE OFFICER MONIQUE AMODEO, Individually and in her Official Capacity; MEDIC MATTHEW FIELD, Individually and in his Official Capacity; Nassau County Employees JOHN DOE 11-20  (the name "John Doe" being fictitious, as the true names are presently unknown); alleges as follows:

### Nature of Action

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 *et seq.* for violation of her civil rights, by defendants and their agents, acting under color of law, statute, ordinance, regulation, custom and usage, which are secured to plaintiff by the Constitution of the United States of America, the amendments thereto, and the common law.  Plaintiff seeks a declaration that defendants' actions, as complained of herein, were invalid, illegal and unconstitutional.

2.      Plaintiff also brings this action seeking to invoke the Court's supplemental jurisdiction over various state claims that she raises arising from defendants' actions.

3.      Plaintiff also brings this action against the so-called "Roosevelt defendants" pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, as amended; Title VII of the Civil Rights of Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and the New York State Executive Law §§ 296 and 297, for employment discrimination based upon age and race/color.

4.      Plaintiff seeks compensatory damages, punitive damages, attorneys fees and such other relief to redress the wrongdoing complained of herein.

### Jurisdiction & Venue

5.      This action is brought pursuant to 42 U.S.C. § 1983 *et seq.* and the Fourth, Fifth

and Fourteenth Amendments to the Constitution of the United States of America.

6.     This action is also brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, as amended; Title VII of the Civil Rights of Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and the New York State Executive Law §§ 296 and 297.

7.     Jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 42 U.S.C. § 2000e-5(f) and the Court's supplemental jurisdiction over plaintiff's State law claims.

8.     Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).  The Roosevelt Union Free School District, the County of Nassau and the Nassau County Police Department are municipal corporations located within the Eastern District of New York.

### Jury Demand

9.     Plaintiff demands a trial by jury in this action on each and every one of her claims.

### Exhaustion of Procedural Prerequisites

#### The Title VII and ADEA Claims

10.     On or about June 23, 2014, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (Charge No. 520-2014-02664).

11.     In said Charge, plaintiff alleged that the "Roosevelt Defendants" had discriminated against her based upon her age and race/color.

12.     On December 19, 2014, the EEOC issued a Notice of Right to Sue to plaintiff with reference to her Charge.  Said notice advised plaintiff of her right to file an action against the

Roosevelt Union Free School District in the appropriate federal court within ninety (90) days of her receipt thereof.

13.     Plaintiff filed this action within ninety (90) days of her receipt of the Notice of Right to Sue.

The State Claims

14.     On or about June 20, 2014, plaintiff caused a Notice of Claim to be served upon the "Roosevelt Defendants" pursuant to applicable, statute, where she gave the "Roosevelt Defendants" notice of her claims.

15.     More than 30 days have lapsed since plaintiff served the Notice of Claim and the claim remains open and unpaid.

16.     On or about August 19, 2014, plaintiff caused a Notice of Claim to be served upon the "County Defendants" pursuant to applicable, statute, where she gave the "County Defendants" notice of her claims.

17.     More than 30 days have lapsed since plaintiff served the Notice of Claim and the claim remains open and unpaid.

**Parties**

18.     Plaintiff is a citizen of the United States of American and, at all times relevant hereto, was and still is a resident of the State of New York, County of Nassau.

19.     Defendant ROOSEVELT UNION FREE SCHOOL DISTRICT ( hereinafter "District") was and still is a municipal corporation existing and organized pursuant to the laws of the State of New York and maintains a principal place of business in the State of New York, County of Nassau at 240 Denton Place, Roosevelt.

20.     Defendant DEBORAH L. WORTHAM (hereinafter "Wortham"), being sued both Individually and in her Official Capacity, at all times relevant hereto, was and still is the Superintendent of defendant District.

21.     Defendant CLYDE BRASWELL, being sued both Individually and in his Official Capacity, at all times relevant hereto, was and still is an employee of defendant District in the title of Principal of the Washington-Rose Elementary School located at 2 Rose Avenue, Roosevelt, New York 11575.

22.     Defendant EDITH L. HIGGINS, being sued both Individually and in her Official Capacity; at all times relevant hereto, was and still is an employee of defendant District in the title of Assistant Principal of the Washington-Rose Elementary School located at 2 Rose Avenue,  Roosevelt, New York 11575.

23.     Defendants Employees of the Roosevelt Union Free School District JOHN DOE 1-10 (the name "John Doe" being fictitious, as the true names are presently unknown), are/were employees of defendant District.

24.     The foregoing defendants are collectively referred to herein as the "Roosevelt Defendants."

25.     Defendant COUNTY OF NASSAU (hereinafter "County"), at all times relevant hereto, was and still is a municipal corporation duly organized and existing pursuant to the laws of the State of New York.

26.     Defendant NASSAU COUNTY POLICE DEPARTMENT (hereinafter "NCPD"), at all times relevant hereto, was and still is an agency of defendant County and is that agency under which the complained of actions occurred.

27.     Defendant POLICE OFFICER JOSEPH STASSI (hereinafter "P.O. Stassi") , being sued both Individually and in his Official Capacity, at all times relevant hereto, was and still is employed as a Police Officer by defendant NCPD.

28.     Defendant POLICE OFFICER MONIQUE AMODEO (hereinafter "P.O. Amodeo") being sued both Individually and in her Official Capacity, at all times relevant hereto, was and still is employed as a Police Officer by defendant NCPD.

29.     Defendant MEDIC MATTHEW FIELD (hereinafter "Medic Field", being sued both Individually and in his Official Capacity, at all times relevant hereto, was and still is employed as a Medic by defendant NCPD.

30.     Defendants Employees of Nassau County JOHN DOE 11-20 (the name "John Doe" being fictitious, as the true names are presently unknown), are/were employees of defendant County.

31.     The foregoing defendants are collectively referred to herein as the "County Defendants."

32.     At all times relevant hereto, the individual Roosevelt Defendants were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of defendant District.

33.     At all times relevant hereto, the individual County Defendants were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of defendant County.

34.     Each and every act of the Roosevelt Defendants, as alleged herein was done by said defendants, while acting within the scope of their employment with defendant District.

35.     Each and every act of the County Defendants, as alleged herein, was done by said defendants, while acting within the scope of their employment with defendant County.

36.     Each and every act of the Roosevelt Defendants, as alleged herein, was done by said defendants while acting in furtherance of their employment by defendant District.

37.     Each and every act of the County Defendants, as alleged herein, was done by said defendants while acting in furtherance of their employment by defendant County.

38.     The acts complained of herein by the Roosevelt Defendants constitute a policy and practice of defendant District.

39.     The acts complained of herein by the County Defendants constitute a policy and practice of defendant County.

40.     The individual defendants, in the scope of their employment, supervised, participated in, approved, carried out, conspired with each other and otherwise ratified the actions complained of herein.

41.     All of the acts described herein, may be fairly said to represent official policy, ordinance and custom and were approved, carried out and acquiesced in by public officers high enough in the relevant municipal entities or with sufficient decision making authority so that their actions may be said to represent municipal decisions.

### Facts

42.     Plaintiff is a Caucasian female who was born in 1951 and is currently 63 years of age.

43.     Plaintiff is currently employed as a 1st grade teacher at the Washington-Rose Elementary School, which is part of defendant District.

44.     Plaintiff has been employed by defendant District for approximately 14 years, all in the Washington-Rose Elementary School.  Plaintiff, in prior years, also taught the 2nd and 3rd grades.  Prior to being employed by defendant District, plaintiff was employed by other districts for approximately 8 years.

45.     Plaintiff, at all times relevant hereto, was a fully tenured teacher.  She has always been and continues to be fully qualified for the positions that she has held.  During the years that plaintiff has taught, she has always exhibited excellent classroom control and her students consistently advanced their skills.

46.     Prior to the events giving rise hereto, plaintiff always received positive performance reviews and there were no issues with her employment.  Plaintiff was well liked and respected by her colleagues, subordinates, administrators, students and parents.

47.     In or about September 2013, the administration at Washington-Rose Elementary School changed.  Defendant Braswell became the Principal and defendant Higgins became the Assistant Principal.  Both are African-American.  It soon became apparent that defendants Braswell and Higgins were intent on discriminating and creating a hostile work environment against older Caucasian teachers.  As a result, defendants Braswell and Higgins began to undertake a series of actions against plaintiff because of her age and race.

48.     Beginning in or about September 2013, plaintiff was subject to discrimination and a hostile work environment by the Roosevelt Defendants because of her age and race/color.  This conduct had no legitimate or justifiable reason and was pervasive, ongoing and unwelcome.  Plaintiff was treated differently than her non-Caucasian and younger co-workers with respect to terms, conditions and benefits of employment.

49.     By their actions, the Roosevelt Defendants acted in a way that adversely affected plaintiff's job status and which constituted adverse employment actions.

50.     During the 2013-2014 school year, it became increasingly evident that defendants Braswell and Higgins were intent on making plaintiff's existence in the school as difficult as possible.  Plaintiff ultimately concluded that the Roosevelt Defendants' actions would not end until they attempted to ensure the cessation of her employment.

51.     During the 2013-2014 school year, the Roosevelt Defendants consistently refused to provide plaintiff and other older Caucasian teachers with the necessary support in the classroom.  The Roosevelt Defendants did not provide plaintiff with appropriate professional development and with a meaningful opportunity to learn the "common core curriculum." The Roosevelt Defendants failure to do so disproportionately impacted the older teachers.

52.     During the 2013-2014 school year, the Roosevelt Defendants assigned plaintiff to classes with an excessive number of students.  The Roosevelt Defendants assigned plaintiff as many as 28 students in her class.  As the school year continued, the Roosevelt Defendants assigned more and more students to plaintiff's class.  Many of these students were special needs students.  By assigning an excessive student load to plaintiff, the Roosevelt Defendant ensured that plaintiff would become overwhelmed.

53.     During the 2013-2014 school year, the Roosevelt Defendants bullied and intimidated plaintiff with constant criticism and negative and derogatory remarks.

54.     The Roosevelt Defendants, during the 2013-2014 school year, gave plaintiff inaccurate and false observation reports.

55.    In a formal observation report completed on April 22, 2014, defendant Higgins gave plaintiff an overall rubric score of 30/40.  In doing so, defendant Higgins falsely found plaintiff to be "developing" in several criteria.  This observation did not fairly and accurately describe plaintiff's job performance.  Plaintiff, as a result, issued a rebuttal to defendant Higgins' observation report, in which she disputed several of defendant Higgins' findings.

56.    Plaintiff, during the 2013-2014 school year, also received four "Mini Observations."  Defendant Higgins issued ones on February 27, 2014, April 5, 2014 and May 25, 2014.  Defendant Braswell issued one on May 26, 2014.  These "Mini Observations" were unjustly critical of plaintiff's job performance and did not legitimately reflect her true job performance.

57.    The Roosevelt Defendants' actions culminated on May 28, 2014.  At that time, defendant Braswell called a meeting of the 1st grade team.  At that time, defendant Braswell advised plaintiff that he was returning a problem student to her class; two days after he had removed her from the class.

58.    Plaintiff believed that defendant Braswell's actions were not justified and that the student would be better suited being placed elsewhere.  Plaintiff became very upset at his actions.  Defendant Braswell then stated, in front of plaintiff's colleagues, words to the effect of "I can't believe that you would do that – the child loves you."  Plaintiff believed that defendant Braswell's actions were continued bullying and intimidation.

59.    Plaintiff became even more upset at defendant Braswell's remark.  She stated to cry and began experiencing chest pain and a migraine headache.

60.    Plaintiff then left defendant Braswell's conference room to go to her classroom.

She was met by a co-worker who retrieved her migraine medication from her classroom. Plaintiff took the medicine and requested to go home. She felt very humiliated and continued to cry.

61.    Defendant Higgins then arrived. Plaintiff told her that she wanted to go home and relax. Plaintiff's sister was called to take her home. Plaintiff started to calm down.

62.    Defendant Higgins asked plaintiff if she was going to "hurt herself." Plaintiff emphatically said "No" that she "would never think of doing that." The School Psychologist was also present and asked plaintiff questions. Plaintiff said she wanted to go home and relax. Defendant Higgins said "Ok." Plaintiff's sister arrived. Plaintiff left the school grounds.

63.    Plaintiff went to her sister's house located at 233 Sportsmans Avenue, Freeport, New York.

64.    Plaintiff continued to have a migraine headache but was starting to feel better.

65.    Several hours later, the doorbell at plaintiff's sister's home rang. Defendants Stassi and Amodeo, of defendant Police Department's First Precinct, were at the door. They indicated that defendant Higgins had contacted defendant Police Department. Defendants Stassi and Amodeo told plaintiff that she had to involuntarily go into an ambulance and would be taken to a Psychiatric Unit. Defendant Amodeo then escorted plaintiff into a room and observed her while she dressed into street attire.

66.    Although several hours had elapsed since plaintiff had left the school premises, neither defendant Higgins nor anyone else employed by the District attempted to contact plaintiff to see how she was feeling.

67.    Defendant Stassi apologized to plaintiff and said that there appeared to be

something wrong with the situation.

68.     Plaintiff made it clear that she was being taken against her will.

69.     A Nassau County ambulance arrived and plaintiff was placed into the ambulance. Plaintiff was accompanied into the ambulance by defendant Field, while defendant Stassi drive the ambulance to Nassau University Medical Center (NUMC).  Defendant Amodeo accompanied the ambulance to NUMC in a police vehicle.

70.     During this time, plaintiff was involuntarily transported to NUMC and was not free to leave.

71.     Plaintiff involuntarily remained at NUMC for several hours and was not free to leave.  She was evaluated and was discharged several hours after her arrival, at approximately 8:00-8:30 p.m..

72.     During the time that plaintiff was at NUMC and not free to leave, she was told by an unidentified nurse that there was no reason why she was there in the first place.

73.     Plaintiff was evaluated by two (2) psychiatrists who opined that plaintiff was at low risk for self-harm or for harm to others.

74.     The next day, plaintiff received a hand delivered letter from defendant Wortham dated May 29, 2014.  This letter advised plaintiff that she was "being reassigned to home with pay, pending a review of your current medical situation."  This action was a continued outrage and part of the Roosevelt Defendants' continued efforts to orchestrate and fabricate the end of plaintiff's employment.

75.     On or about June 17, 2014, plaintiff received another letter from defendant Wortham.  This letter advised plaintiff that "at a meeting held on June 5, 2014, the Board of

Education adopted a resolution directing you to appear for a medical examination pursuant to Section 913 of the New York State Education Law." Plaintiff was told that "the purpose of the examination is to determine your mental capacity to perform your duties as a teacher in the Roosevelt Union Free School District."

76.     Plaintiff was told that the examination was scheduled for June 19, 2014.

77.     Plaintiff was given one days' notice.

78.     The Roosevelt Defendants were subverting the Section 913 process and were using psychology as a weapon to discriminate and create a hostile work environment against plaintiff to ensure the end of her employment.

79.     Plaintiff was ultimately evaluated by Randall Solomon, M.D. pursuant to Section 913 of the Education Law on August 29, 2014. Dr. Solomon opined that "[plaintiff] is mentally fit to return to her position as a teacher in the Roosevelt Union Free School District."

80.     In a letter dated September 2, 2014, Robert M. Brisbane, Assistant Superintendent for Human Resources & Professional Development, advised plaintiff that "commencing Wednesday, September 3, 2014, you should return to your full-time elementary teacher position at Washington-Rose Elementary School."

81.     The said letter advised plaintiff that her assignment for the 2014-2015 school year would be as a 1st grade teacher.

82.     Plaintiff has remained a 1st grade teacher during the 2014-2015 school year.

83.     As a result of the foregoing, plaintiff was discriminated against, forced to endure a hostile work environment, was deprived of her liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe

emotional distress, was involuntarily confined to the NUMC and was forced to incur substantial expenses.

### Count I Against Defendant District
### ADEA - 29 U.S.C. § 621 et seq.

84.     Plaintiff alleges that the complained of actions, violate the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq., as amended, in that the actions of defendant District constitute unlawful employment practices because of plaintiff's age and would not have been committed but for plaintiff's age.

85.     By its actions, defendant District has treated plaintiff differently from other employees on account of her age and discriminated against her in compensation, terms, conditions and privileges of employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq., as amended.

86.     By its actions, defendant District has also subjected plaintiff to a hostile work environment because of her age.

87.     The acts of defendant District were pervasive, unfair, discriminatory, disruptive to plaintiff's title and position and damaging to her physical and psychological well-being.

88.     The actions and conduct of defendant District constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

89.     Defendant District cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can its actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendant District could attempt to mask its actions.

90.     By reason of the actions and inactions of defendant District, whereby defendant

District has engaged in unlawful discriminatory practices based upon age, plaintiff has suffered economic loss; her career was irreparably damaged; she was made physically and emotionally ill; she suffered and continues to suffer damage to her reputation among her peers; she suffered and continues to suffer embarrassment and humiliation and was otherwise greatly injured.

91.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

**Count II Against Roosevelt Defendants**
**New York State Executive Law**

92.     Plaintiff alleges that the complained of actions, violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of the Roosevelt Defendants constitute unlawful employment practices because of plaintiff's age.

93.     By their actions, the Roosevelt Defendants have treated plaintiff differently from other employees on account of her age and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law, specifically § 296 and § 297.

94.     By their actions, the Roosevelt Defendants have also subjected plaintiff to a hostile work environment because of her age.

95.     The acts of the Roosevelt Defendants were pervasive, unfair, discriminatory, disruptive to plaintiff's title and position and damaging to her physical and psychological well-being.

96.     The actions and conduct of the Roosevelt Defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

97.     The Roosevelt Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that the Roosevelt Defendants could attempt to mask their actions.

98.     By reason of the actions and inactions of the Roosevelt Defendants, whereby they have engaged in unlawful discriminatory practices based upon age, plaintiff has suffered economic loss; her career was irreparably damaged; she was made physically and emotionally ill; she suffered and continues to suffer damage to her reputation among her peers; she suffered and continues to suffer embarrassment and humiliation and was otherwise greatly injured.

99.     By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

## Count III Against Defendant District
## Title VII of the Civil  Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

100.    Plaintiff alleges that the complained of actions, violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., in that the actions of defendant District constitute unlawful employment practices because of plaintiff's race/color.

101.    By its actions, defendant District has treated plaintiff differently from other

employees on account of her race/color and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

102.    By its actions, defendant District has also subjected plaintiff to a hostile work environment because of her race/color.

103.    The acts of defendant District were pervasive, unfair, discriminatory, disruptive to plaintiff's title and position and damaging to her physical and psychological well-being.

104.    The actions and conduct of defendant District constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

105.    Defendant District cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can its actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

106.    By reason of the actions and inactions of defendant District, whereby defendant District has engaged in unlawful discriminatory practices based upon race/color, plaintiff has suffered economic loss; her career was irreparably damaged; she was made physically and emotionally ill; she suffered and continues to suffer damage to her reputation among her peers; she suffered and continues to suffer embarrassment and humiliation and was otherwise greatly injured.

107.    By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a

jury at trial with appropriate interest.

**Count IV Against Roosevelt Defendants**
**New York State Executive Law**

108.    Plaintiff alleges that the complained of actions, violate Article 15 of the New York State Executive Law, specifically § 296 and § 297, in that the actions of the Roosevelt Defendants constitute unlawful employment practices because of plaintiff's race/color.

109.    By their actions, the Roosevelt Defendants have treated plaintiff differently from other employees on account of her race/color and discriminated against her in compensation, terms, conditions and privileges of employment in violation of Article 15 of the New York State Executive Law, specifically § 296 and § 297.

110.    By their actions, the Roosevelt Defendants have also subjected plaintiff to a hostile work environment because of her race/color.

111.    The acts of the Roosevelt Defendants were pervasive, unfair, discriminatory, disruptive to plaintiff's title and position and damaging to his physical and psychological well-being.

112.    The actions and conduct of the Roosevelt Defendants constitute unlawful behavior and their purpose was to create an intimidating, hostile and offensive work environment.

113.    The Roosevelt Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can its actions be otherwise justified.  Any alleged non-discriminatory reason is nothing more than a pretext so that defendant could attempt to mask its actions.

114.    By reason of the actions and inactions of the Roosevelt Defendants, whereby

they have engaged in unlawful discriminatory practices based upon race/color, plaintiff has suffered economic loss; her career was irreparably damaged; she was made physically and emotionally ill; she suffered and continues to suffer damage to her reputation among her peers; she suffered and continues to suffer embarrassment and humiliation and was otherwise greatly injured.

115.    By reason of the foregoing, plaintiff has become entitled to appropriate injunctive relief and to an award of compensatory damages, other appropriate damages, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

**Count V Against All Defendants**
**False Arrest Under 42 U.S.C. § 1983**

116.    As a result of the aforesaid conduct by defendants, plaintiff was subjected to illegal, improper and false imprisonment by the defendants and was taken into custody and caused to be falsely imprisoned, restrained, detained, confined and evaluated for unlawful purposes and cause, without any good faith belief that plaintiff appeared to be mentally ill and was conducting herself in a manner which was likely to result in serious harm to herself or others.

117.    As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, she was placed in fear for her safety and she was humiliated and embarrassed, all without proper purpose and cause.

118.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary

loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

119.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count VI Against All Defendants**
**Fifth and Fourteenth Amendment Violations -**
**<u>Procedural and Substantive Due Process</u>**

120.    Plaintiff contends that the actions and omissions of defendants and their agents, engaged in under color of law and their authority as public officers, including but not limited to causing plaintiff to be unlawfully taken to the psychiatric unit of NUMC, having her liberty restrained and being evaluated, were designed for purposes other than that properly required by statute, ordinance or regulation, including, but not limited to, intimidation, harassment and punitive purposes.

121.    The actions and omissions of defendants and their agents, engaged in under color of law and their authority as public officers, were not a legitimate exercise of municipal authority nor a proper means to achieve any legitimate public purpose.

122.    The actions and omissions of defendants and their agents, engaged in under color of law and their authority as public officers, constitute a gross misuse of power possessed by the defendants under law.

123.    The actions and omissions of defendants and their agents, engaged in under color of law and their authority as public officers, constitute a violation of plaintiff's rights to substantive and procedural due process guaranteed to her by the Fifth and Fourteenth

Amendments to the Constitution of the United States of America.

124.    Plaintiff has no other effective means of enforcing her Fifth and Fourteenth Amendment rights other than by seeking the requested relief.

125.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

126.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count VII Against All Defendants**
**Fifth and Fourteenth Amendment Violations -**
**<u>Due Process Liberty Interest</u>**

127.    By engaging in the complained of actions, defendants and their agents, acting under color of law and their authority as public officers, intentionally and recklessly deprived plaintiff of her liberty interest without due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

128.    Plaintiff has no other effective means of enforcing her Fifth and Fourteenth Amendment rights other than by seeking the requested relief.

129.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary

loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

130.   As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count VIII Against Roosevelt Defendants**
**Fifth and Fourteenth Amendment Violations - Equal Protection**

131.   In committing the complained of acts and omissions, the Roosevelt Defendants, acting under color of law and their authority as public officers, singled out plaintiff because of her age and race/color and intentionally violated her rights under the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

132.   Plaintiff has no other effective means of enforcing her Fifth and Fourteenth Amendment rights other than by seeking the requested relief.

133.   As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

134.   As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count IX Against All Defendants**
**Fourth, Fifth and Fourteenth Amendment Violations -**
**Unreasonable Search and Seizure**

135.   In causing plaintiff to be subjected to an unlawful and unreasonable psychiatric evaluation on May 27, 2014, with no rational relation to any legitimate purpose, when defendants knew they had no rational or appropriate reason to justify plaintiff being transported against her will to the psychiatric unit at NUMC, defendants intentionally and recklessly violated plaintiff's right to privacy and to be free from unreasonable searches and seizures, in violation of her rights under the Fourth Amendment to the Constitution of the United States of America.

136.   Defendants were grossly negligent and/or deliberately indifferent by causing plaintiff to be transported against her will to the psychiatric unit at NUMC because they knew or should have known that plaintiff did not appear to be mentally ill and was not conducting herself in a manner which was likely to result in severe harm to herself or others.

137.   By subjecting plaintiff to a search and seizure so devoid of rational relation to any legitimate purpose that the search's only possible purpose was punitive and abusive, defendants intentionally or recklessly violated plaintiff's right to be free from unwarranted psychiatric evaluation and violated her privacy rights.

138.   As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

139.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count X Against All Defendants**
**Conspiracy to Violate Plaintiff's Civil Rights Under 42 U.S.C. § 1983**

140.    Defendants conspired and acted in concert to do, whatever was necessary, lawful or not, to cause the detention, imprisonment and involuntary confinement of plaintiff at NUMC.

141.    Throughout the period of the conspiracy, defendants pursued their objectives with actual malice toward plaintiff, with utter and deliberate indifference to and disregard for plaintiff's rights under the Constitution and laws of the United States, without probable or reasonable cause or any other lawful basis for doing so.

142.    Pursuant to the conspiracy, the conspirators, and their employees, agents and servants, unlawfully, intentionally, recklessly, negligently, and/or with complete indifference to the rights of plaintiff [a] never attempted to contact plaintiff to see how she was feeling; [b] contacted the Nassau County Police Department after plaintiff had already left the District's property; [c] arrived at plaintiff's sister's residence several hours after she left the District's property; and [d] caused plaintiff to be unlawfully detained, restrained, transported and involuntarily confined and evaluated at NUMC.

143.    The aforesaid conduct of defendants operated to deprive plaintiff of important and well-established rights under the Constitution and laws of the United States, as set forth herein.

144.    As a result of defendants' unlawful conduct, plaintiff has experienced and

-24-

continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

145.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count XI Against All Defendants**
**New York State Law - Assault**

146.    Defendants' aforementioned actions placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

147.    As a result of defendants' conduct, plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

148.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

149.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

## Count XII Against All Defendants
## New York State Law - False Imprisonment

150.    As a result of the foregoing, plaintiff was falsely imprisoned, her liberty was restricted for an extended period of time, was put in fear for her safety and was humiliated.

151.    Plaintiff was conscious of said confinement and did not consent to same.

152.    The confinement of plaintiff was without necessary cause and was not otherwise privileged.

153.    As a result of the aforementioned conduct, plaintiff has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

154.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

155.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

## Count XIII Against All Defendants
## New York State Law - Intentional Infliction of Emotional Distress

156.    The aforesaid conduct was extreme and outrageous and exceed all reasonable bounds of decency.

157.    The aforesaid conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff.

158.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

159.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

### Count XIV Against Defendants District and County
### New York State Law - Negligent Hiring/Training/Supervision

160.    Defendants District and County selected, hired, trained, retained, assigned and supervised all members of their staff, including the individually named defendants.

161.    Defendants District and County were negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of their staff, including the individually named defendants.

162.    As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

163.    As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count XV Against All Defendants**
**New York State Law - Violation of Mental Hygiene Law**

164. The actions of all defendants, as complained of herein, were in violation of the relevant portions of the Mental Hygiene Law in that defendants caused plaintiff to be detained, restrained, transported and involuntarily confined and evaluated at NUMC without there being any reasonable or well founded belief that plaintiff appeared to be mentally ill and was conducting herself in a manner which was likely to result in serious harm to herself or others.

165. As such, defendants acted with gross negligence.

166. As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

167. As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

**Count XVI Against All Defendants**
**New York State Law - Negligence and/or Gross Negligence**

168. As hereinbefore set forth, defendants acted with negligence and/or gross negligence.

169. As a result of defendants' unlawful conduct, plaintiff has experienced and continues to experience humiliation, deprivation of liberty, emotional distress, pain and suffering, stigmatization, embarrassment, damage to her profession, economic and pecuniary

loss and has been and continues to be otherwise damaged due to the wrongful conduct of defendants.

170.   As a result of the foregoing, plaintiff has become entitled to compensatory and punitive damages in an amount to be determined at trial, with costs, disbursements, attorney fees and other appropriate relief.

### **Prayer for Relief**

WHEREFORE, plaintiff SUSAN MCCARTHY, respectfully requests that judgment be entered against defendants, ROOSEVELT UNION FREE SCHOOL DISTRICT; DEBORAH L. WORTHAM, Individually and in her Official Capacity; CLYDE BRASWELL, Individually and in his Official Capacity; EDITH L. HIGGINS, Individually and in her Official Capacity; Roosevelt Union Free School District Employees JOHN DOE 1-10 (the name "John Doe" being fictitious, as the true names are presently unknown); COUNTY OF NASSAU; NASSAU COUNTY POLICE DEPARTMENT; POLICE OFFICER JOSEPH STASSI, Individually and in his Official Capacity; POLICE OFFICER MONIQUE AMODEO, Individually and in her Official Capacity; MEDIC MATTHEW FIELD, Individually and in his Official Capacity; Nassau County Employees JOHN DOE 11-20 (the name "John Doe" being fictitious, as the true names are presently unknown), on each and every count, as hereinbefore pled, awarding appropriate injunctive relief, compensatory damages, punitive damages, other appropriate damages, attorneys fees, expert fees, and costs and disbursements in an amount to be determined by a jury at trial with appropriate interest.

Dated: Jericho, New York
      March 19, 2015

 

                                                                   Respectfully submitted,
WOLIN & WOLIN

S/_____
By: Alan E. Wolin, Esq.
Attorney for *Plaintiff*
420 Jericho Turnpike, Suite 215
Jericho, New York 11753
Telephone: (516) 938-1199
Facsimile: (516) 938-1178
E-Mail: wolinlaw@aol.com

-30-

**<u>VERIFICATION</u>**

State of New York      )
                       )ss.:
County of Nassau       )

 SUSAN McCARTHY, being duly sworn, deposes and says:

 I am the plaintiff in the within action and I have read the foregoing Verified Complaint and know the contents thereof, the same is true to my knowledge, except as to those matters therein stated to be based upon information and belief, and as to those matters I believe them to be true.

S/_____
SUSAN McCARTHY

Sworn to before me this
19th day of March, 2015

S/_____
Notary Public

JILL A. FIEMAN
Notary Public, State of New York
No. 4993075
Qualified in Nassau County
Commission Expires 3/9/2018