# EXHIBIT K

# ORIGINAL

1

2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - x
   SUSAN McCARTHY,

4
                         Plaintiff,

5        - against -

6  ROOSEVELT UNION FREE SCHOOL DISTRICT;
   DEBORAH L. WORTHAM, individually and

7  in her Official Capacity; CLYDE
   BRASWELL, individually and in his

8  Official Capacity; EDITH HIGGINS,
   individually and in her Official

9  Capacity; Roosevelt Union Free School
   District employees "JOHN DOE" 1-10 (the

10 name "John Doe" be fictitious, as the
   true names are presently unknown);

11 COUNTY OF NASSAU; NASSAU COUNTY POLICE
   DEPARTMENT; POLICE OFFICER JOSEPH STASSI,

12 individually and in his Official
   Capacity; POLICE OFFICER MONIQUE AMODEO,

13 individually and in her Official
   Capacity; MEDIC MATTHEW FIELD,

14 individually and in his Official
   Capacity; Nassau County employees

15 "JOHN DOE" 11-20 (the name "John Doe"
   being fictitious, as the true names are

16 presently unknown),

17                         Defendants.
   - - - - - - - - - - - - - - - - - - x

18
                         240 Denton Place

19                       Roosevelt, New York

20                       May 12, 2016
                         3:56 P.M.

21

22

23 WITNESS:   MATTHEW FIELD

24

25

Page 2

1

2

3

4

5       DEPOSITION of MATTHEW FIELD, one of the

6    Defendants herein, taken by the Plaintiff and

7    Co-Defendants herein, pursuant to The Federal Rules

8    Of Civil Procedure, held at the above-mentioned time

9    and place, before Raymond Stalker, RPR, a Notary

10   Public of the State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2    A P P E A R A N C E S :
 3    WOLIN & WOLIN, P.C.
      Attorneys for Plaintiff
 4        420 Jericho Turnpike
          Jericho, New York 11753
 5
      BY:  ALAN E. WOLIN, ESQ.
 6
 7    SILVERMAN & ASSOCIATES
      Attorneys for Defendants
 8    Roosevelt Union Free School District,
      Deborah L. Wortham, Clyde Braswell,
 9    Edith Higgins, district employees
      John Doe 1-10
10        445 Hamilton Avenue
          White Plains, New York 10601
11
      BY:  GERALD S. SMTIH, ESQ.
12
13    NASSAU COUNTY ATTORNEY'S OFFICE
      Attorneys for Defendants
14    County of Nassau; Nassau County Police
      Department; POLICE Officer Joseph Stassi,
15    Police Officer Monique Amodeo,
      Medic Matthew Field, Nassau County employees
16    "JOHN DOE" 11-20
          One West Street,
17        Mineola, New York 11501
18    BY:  LIORA BEN-SOREK, ESQ.
19
20
21
22
23
24
25
```

Page 4

1

2

3

4

5          IT IS HEREBY stipulated and agreed by and

6    among counsel for the respective parties hereto,

7    that the sealing and certification of the within

8    deposition shall be and the same hereby waived.

9          IT IS FURTHER STIPULATED AND AGREED that all

10   objections, except to the form of the question,

11   shall be reserved to the time of trial;

12         IT IS FURTHER STIPULATED AND AGREED that the

13   within deposition may be signed before any Notary

14   Public with the same force and effect as if signed

15   and sworn to before the court.

16

17

18

19

20

21

22

23

24

25

1                    MATTHEW FIELD

2    M A T T H E W   F I E L D, one of the Defendants

3    herein, having first been duly sworn by a Notary

4    Public of the State of New York, was examined and

5    testified as follows:

6                    MS. BEN-SOREK:  Pertaining to

7              Medic Matthew Field and the prior

8              deposition, which was of Police

9              Officer Amodeo, the defense would

10             request under the civil rules copies

11             of the transcripts to enabled the

12             officers and AMT to review their

13             testimony and see if there is A need

14             for any amendments or corrections.

15                  MR. WOLIN:  Right.

16             Good afternoon.  My name Alan

17             Wolin.  I am attorney and I represent

18             Ms. McCarthy in this lawsuit that she

19             has brought.  I will be asking you a

20             few questions concerning the facts

21             and circumstances of the lawsuit.

22             If at any time I ask you a

23             question that you don't understand,

24             ask me to rephrase it, then I will

25             attempt to do the best I can.

Page 6

1                          MATTHEW FIELD

2    EXAMINATION BY

3    MR. WOLIN:

4         Q.    Please state your full name for

5    the record.

6         A.    Matthew Field.

7         Q.    What is your present business

8    address?

9         A.    Police Headquarters, 1490

10   Franklin Avenue, Mineola, New York 11501.

11        Q.    Did you speak to anyone to

12   prepare for this deposition today?

13        A.    Prior to?

14        Q.    Yes.

15        A.    I met with Ms. Sorek.

16        Q.    And when did you meet with her?

17        A.    Oh, probably over a month ago.

18        Q.    Did you speak to anybody else,

19   besides counsel, to prepare for this

20   deposition?

21        A.    No, sir.

22        Q.    Did you review any documents to

23   prepare for this deposition?

24        A.    The PCR, sir.

25        Q.    And that's the patient care

Page 7

1                       MATTHEW FIELD

2      report?

3           A.      Yes, sir.

4           Q.      I show you what had been marked

5      as Exhibit 11; is that patient care report

6      that you reviewed?

7           A.      It looks to be the same.

8           Q.      Did you review any other

9      documents to prepare to deposition?

10          A.      I looked at my copy of the memo

11     book.

12                  MR. WOLIN:  Please mark this.

13                  (Whereupon, at this time, the

14              above-mentioned memo book was marked

15              by the reporter as Plaintiff's

16              Exhibit 16, for identification, as of

17              this date.)

18          Q.      I show what we have just marked

19     as Exhibit 16; is that excerpt from the memo

20     book that you were referring to?

21          A.      Its looks to be, sir.

22          Q.      Did you review any other

23     documents to prepare this deposition?

24          A.      No.

25          Q.      And by whom are you currently

1                    MATTHEW FIELD

2    employed?

3         A.    Nassau County Police Department.

4         Q.    And how long have you been

5    employed by the Nassau County Police

6    Department?

7         A.    Since 2009.

8         Q.    And what is your job title?

9         A.    Nassau County Police Department

10   police Medic.

11        Q.    Have you served in that job title

12   during your entire career with Nassau County?

13        A.    No.

14        Q.    How long have been a medic?

15        A.    Since February of 2011.

16        Q.    And prior to that what was your

17   job title?

18        A.    Communications operator.

19        Q.    That was with the police

20   department also; is that correct?

21        A.    Yes, sir.

22        Q.    And what training have you

23   received to be a medic?

24        A.    I went through the Fire Police

25   Academy to become an emergency medical

Page 9

1                    MATTHEW FIELD

2   technician critical care.  Then I went

3   through the police department portion of it

4   once I got hired in 2011, which included

5   training in the police academy and then also

6   in the Fire Police Academy.

7        Q.    Now, we have also used the

8   acronym AMT?

9        A.    Yes, sir.

10       Q.    Are you also considered and AMT?

11       A.    We were until recent.

12       Q.    So the title has changed?

13       A.    Yes.

14       Q.    But the job duties are the same?

15       A.    Yes, sir.

16       Q.    Going back to May 2014, your job

17  was then an AMT?

18       A.    Yes, sir.

19       Q.    Just a couple of other background

20  questions.  Have you ever testified under

21  oath before?

22       A.    No, sir.

23       Q.    Have you ever been convicted of a

24  crime?

25       A.    No, sir.

Page 10

1                       MATTHEW FIELD
2          Q.      Now, I want to direct your
3      attention to May 28th, 2014; were you working
4      on that day?
5          A.      Yes, sir.
6          Q.      What tour were you working?
7          A.      Day tour.  I work 0700 to 1900.
8          Q.      Did there come a time that you
9      were dispatched to Sportsman Avenue in
10     Freeport?
11         A.      Yes, sir.
12         Q.      How were you dispatched to that
13     location?
14         A.      Fire and Communications Bureau.
15         Q.      What did the Communication Bureau
16     say at the time?
17         A.      I don't recall.
18         Q.      Is it a dispatcher who dispatches
19     you to the scene?
20         A.      Yes, sir.
21         Q.      And do they tell you the type of
22     situation that it is?
23         A.      To the best of their knowledge.
24         Q.      Do you remember what they said in
25     this situation?

Page 11

1                     MATTHEW FIELD

2          A.     No.

3          Q.     Do you remember anything about

4   what they said?

5          A.     No, sir.

6          Q.     A time came that you reported to

7   this location in Sportsman's Avenue in

8   Freeport?

9          A.     Just rephrase.

10         Q.     Did a time come on May 28th, 2014

11  that you responded to Sportsman Avenue in

12  Freeport?

13         A.     The time come meaning?

14         Q.     Did you?

15         A.     Yes, sir.

16         Q.     That's just a fancy way that

17  lawyers sometimes phrase it.

18                Did you report to Sportsman

19  Avenue in Freeport on May 28th?

20         A.     Yes, sir.

21         Q.     Were you driving an ambulance in

22  going there?

23         A.     Yes, sir.  We always drive

24  ambulances.

25         Q.     When you arrived at the scene,

1          MATTHEW FIELD

2   did you encounter any police officers?

3          A.      Police officers are always

4   dispatched to the calls were assigned to,

5   yes.

6          Q.      Were there police officers

7   already on the scene when you arrived?

8          A.      I believe so, yes.

9          Q.      Do you remember who the police

10  officers were?

11         A.      Officer Stassi and Amodeo.

12         Q.      Had you every met them before

13  that day?

14         A.      Yes, sir.

15         Q.      Approximately how many times?

16         A.      I wouldn't be able to give a

17  number, sir.

18         Q.      When you arrived on the scene,

19  did you speak to either or both of the police

20  officers?

21         A.      I don't recall specifically, but

22  typically yes, I do.

23         Q.      Do you remember specifically what

24  happened on May 28th when you arrived?

25         A.      Just from what I remember of what

Page 13

MATTHEW FIELD

1
2     I wrote in my PCR.

3         Q.     You can us it TO refresh your
4     recollection by looking at IT, but I would
5     like you to testify as best you can
6     independently of looking at the documents,
7     but you can look at the document to refresh
8     your recollection.

9             Can you tell me in your own words
10    what happened when you arrived at the 233
11    Sportsman Avenue location?

12        A.     The police stated they had a
13    female that told the school psychologist that
14    she wanted to hurt herself.

15        Q.     Do you remember which of the
16    police officers said that to you?

17        A.     No.

18        Q.     Did either of the police officers
19    say anything else to you?

20        A.     I don't recall.

21        Q.     Did either of police officer tell
22    you that Ms. McCarthy had told the police
23    officers that she wanted to kill herself?

24        A.     Say that again.

25        Q.     Did either of the police officers

Page 14

MATTHEW FIELD

1

2    tell you that Ms. McCarthy had told them, the

3    police officers, in their presence that she

4    wanted to kill herself.

5          A.      I don't recall.

6          Q.      What, if anything, else did the

7    police officers say to you when you arrived?

8          A.      I don't recall.

9          Q.      Now, did you see Ms. McCarthy?

10         A.      Yes, sir.

11         Q.      First of all, where was she when

12   you saw her?

13         A.      I don't recall.

14         Q.      Can you describe her demeanor

15   when you saw her?

16         A.      I don't recall.

17         Q.      Do you remember if she was calm,

18   do you remember if she was upset?

19         A.      Specifically, no.

20         Q.      Do you remember generally?

21         A.      If somebody was not calm they

22   would typically either be restrained or and I

23   would have documented that.  I don't see that

24   on my documentation.

25         Q.      So if she was restrained it would

Page 15

```
 1                      MATTHEW FIELD
 2    have been on your documentation?
 3         A.     Yes, sir.
 4         Q.     What does it mean to be
 5    restrained?
 6         A.     Handcuffed.
 7         Q.     Under what circumstances does a
 8    police officer handcuff someone who may be
 9    mentally disabled?
10         A.     I'm not sure of their procedure.
11         Q.     But you didn't observe her to be
12    restrained; is that correct?
13         A.     I don't believe so, because
14    otherwise it would have been documented.
15         Q.     Now, when you saw her, was she
16    standing, was she sitting on a chair?
17         A.     I don't recall.
18         Q.     When you saw here, do you recall
19    her acting out in any way, shape or form?
20         A.     I don't recall.
21         Q.     If she was acting out would, that
22    be in your report?
23                MS. BEN-SOREK:  Objection to
24         form.  You can answer.
25         A.     I'm sorry.
```

Page 16

1                    MATTHEW FIELD

2        Q.    Do you understand what I mean by

3   acting out?

4        A.    Can you explain?

5        Q.    Was she displaying any emotions,

6   was she threatening anybody --

7        A.    I don't recall.

8        Q.    -- was she flailing her arms or

9   legs?

10        A.    I don't recall.

11        Q.    Was she yelling, was she doing

12   anything to display any signs of being

13   mentally disturbed?

14        A.    I don't recall, sir.

15        Q.    Have you dealt with mentally

16   disturbed people in the past?

17        A.    Yes, sir.

18        Q.    Do they usually, in your

19   encounters with them, do they usually display

20   any type of demeanor?

21        A.    All cases are different.

22        Q.    Well, if somebody is truly mental

23   disturbed, what demeanor do they portray?

24            MS. BEN-SOREK:  Objection.  You

25        can answer.

1                    MATTHEW FIELD

2        A.      It's hard to say because,

3    somebody could have made statement, somebody

4    could be acting irrational, so those are two

5    separate types, but they're classified under

6    mental.

7        Q.      But you don't recall there being

8    anything indicating she was anything other

9    than calm when you arrived?

10       A.      I don't recall.

11               MS. BEN-SOREK:   Objection.

12       Q.      Did you speak to Ms. McCarthy

13   when you arrived?

14       A.      Based on my PCR, yes.

15       Q.      What did you say to her and what

16   did she say to you?

17       A.      I don't recall specifics.

18       Q.      When did you prepare the PCR?

19       A.      En route to the hospital.

20       Q.      So you dictated it?

21       A.      We type.

22       Q.      You typed it in the ambulance on

23   the way to the hospital after the officer was

24   driving?

25       A.      Either there or at the hospital.

Page 18

1                      MATTHEW FIELD
2    I don't recall in this specific situation.
3          Q.      Do you remember who drove the
4    ambulance?
5          A.      Again, going back to my PCR, it
6    says, "PO Stassi."
7          Q.      Then the other police officer
8    would of driven the patrol car?
9          A.      Typically.
10         Q.      Now, were you sitting with Ms.
11   McCarthy in what do you call it, I guess the
12   ambulance portion of the vehicle?
13         A.      Yes, sir.
14         Q.      Did you have any conversation
15   with her?
16         A.      I don't recall specific, other
17   than what I documented here.
18         Q.      While you were en route to the
19   hospital, was she calm?
20         A.      I don't recall.
21         Q.      If there was anything unusual or
22   anything untoward, would it be reflected in
23   your report?
24                 MS. BEN-SOREK:  Objection.
25         A.      Yes, sir.

Page 19

1                    MATTHEW FIELD

2       Q.      The answer is yes?

3       A.      Yes, sir.

4       Q.      Is there anything in your report

5   that would reflect that?

6       A.      No. sir.

7       Q.      Did you take her vitals?

8       A.      No, sir.

9       Q.      Why not?

10      A.      I don't recall.

11      Q.      Is it protocol that you take the

12  vitals?

13              MS. BEN-SOREK:  Objection to

14          form.  Ask the witness his policy.

15      Q.      Is there a policy or practice

16  with reference to taking vitals?

17      A.      We take vitals, but sometimes we

18  are not able to obtain them.

19      Q.      Did you take her blood pressure?

20      A.      No, sir.

21      Q.      Did you make any effort to take

22  her blood pressure?

23      A.      I don't recall.

24      Q.      Now, in the comment portion you

25  state, "Upon arrival found a sixty-two year

Page 20

1                    MATTHEW FIELD

2      old female with police stating she told the

3      school psychologist that she wanted to kill

4      herself"; do you see that?

5           A.     Yes, sir.

6           Q.     Do you remember which of the

7      police officers told you that?

8           A.     No, sir.

9           Q.     Did you go on and say, "P-T," I

10     assume that's patient?

11          A.     Yes, sir.

12          Q.     "States she said my head hurts so

13     bad I would not care if I die"; do you see

14     that?

15          A.     Yes, sir.

16          Q.     What is the source of information

17     for that statement?

18          A.     The source of information meaning

19     who said it?

20          Q.     Yes.

21          A.     That would be the patient.

22          Q.     Did she say it in your presence?

23          A.     Yes, sir.

24          Q.     Did she ever say in your presence

25     that she wanted to kill herself?

Page 21

1                    MATTHEW FIELD

2        A.      She, in my presence, stated

3    whatever I wrote on the PCR.

4        Q.      But she didn't come out and say

5    it in those many words, "I want to kill

6    myself," right?

7        A.      I didn't reflect that on the PCR,

8    right.

9        Q.      If she had said that, would it be

10   in the PCR?

11       A.      Yes, sir.

12       Q.      And she told you she had a

13   headache?

14       A.      Yes, sir.

15       Q.      And then you say "Is upset as to

16   what is going on with her C-L-S-S," I assume

17   that means class?

18       A.      I believe so.

19       Q.      And did she tell that you?

20       A.      Yes, sir.

21       Q.      Did she tell you why she was

22   upset as to what is going on with her class?

23       A.      I don't recall.

24       Q.      Did she say anything else that's

25   not documented in this comments portion?

Page 22

1                    MATTHEW FIELD

2        A.      If it's not documented, I don't

3    recall, sir.

4        Q.      The comment that you say she made

5    about that, "My head hurts so bad I would not

6    care if I die," was that made in the presence

7    of the police officers?

8        A.      I'm not sure.  I don't recall.

9        Q.      Did you ever speak to Ms.

10   McCarthy in the house when the police

11   officers were not present?

12       A.      I don't recall.

13       Q.      Now, what, if any, training do

14   you remember with reference to mentally

15   disturbed people?

16              MS. BEN-SOREK:  Objection to

17          form.  You can answer.

18       A.      How to speak to people when we

19   know -- when it becomes an issue to restrain

20   somebody.

21       Q.      And what do you mean when you

22   speak to people?  What do people say or do

23   which would lead you to believe that they're

24   mentally disabled or mental disturbed?

25       A.      Make suicidal or homicidal

1                    MATTHEW FIELD

2    comments, acting irrational.

3         Q.    When you say acting irrational,

4    what can one do to act irrational?

5         A.    Acting aggressive, agitated.

6         Q.    Did you observe her acting

7    agitated?

8         A.    I don't recall.

9         Q.    Did you observe her acting

10   aggressively?

11        A.    I don't recall.

12        Q.    Now, when you got there was there

13   any discussion between you and the police

14   officers as to whether or not she should be

15   transported to the medical center?

16        A.    I don't recall.

17        Q.    Did either of the police officers

18   ask you your opinion as to whether or not she

19   should be transported?

20        A.    I don't recall, sir.

21        Q.    Who is responsible for making the

22   determination as to whether or not she should

23   be transported; was it the police officers on

24   the scene?

25                    MS. BEN-SOREK:   Objection.   You

Page 24

1                    MATTHEW FIELD

2          can answer.

3      A.      Who was responsible?

4      Q.      Yes.

5      A.      I don't recall in this specific

6   case.

7      Q.      Who is normally is responsible?

8      A.      The police officer.

9      Q.      Now, you said you don't remember

10  this specific case, but who else could have

11  been responsible, other than the police

12  officers?

13     A.      No one.

14     Q.      So as the AMT is it your call to

15  determine if she goes to the hospital or are

16  you just there to drive the ambulance?

17     A.      We go with the police officers to

18  the hospital.  We don't drive to the

19  hospital.

20     Q.      You don't drive, but do you have

21  any discretion when you arrive?  Obviously,

22  the police officers are in control of the

23  scene, right?

24     A.      Yes, sir.

25     Q.      Do you have any discretion or say

Page 25

                    MATTHEW FIELD

1

2    as an AMT as to whether or not the person

3    gets transported or is it just the police

4    officers' call?

5              MS. BEN-SOREK:  Again,

6         objection.  You're not asking him

7         procedure.  Your asking him his

8         recollection of the --

9              MR. WOLIN:  Well, I'm asking him

10        procedure.  I don't know that he said

11        that he had a specific recollection.

12             MS. BEN-SOREK:  I can't let him

13        testify about procedure for the

14        department.  That would be expert.

15             MR. WOLIN:  His procedure?

16             MS. BEN-SOREK:  His procedure,

17        yes, his recollection of what he

18        does.

19             MR. WOLIN:  Right, exactly.

20        A.    I don't know the police officers

21   procedures or the law that they, you know,

22   that they --

23        Q.    As an AMT are you permitted to

24   overrule a determination of a police officer

25   in transporting somebody to the hospital?

Page 26

1                        MATTHEW FIELD

2                  MS. BEN-SOREK:  To your

3              understanding?

4         A.      To my understanding?  No.

5         Q.      So if a police officer says

6    transport that person, you have to transport

7    that person, right?

8                  MS. BEN-SOREK:  Just for the

9              record, if the AMT feels --

10        A.      From my understanding, yes.

11        Q.      Based upon your training with

12   mentally disturbed people, did you form any

13   opinion as to whether or not on that day Ms.

14   McCarthy should have been transported?

15                 MS. BEN-SOREK:  You can answer.

16        A.      I don't recall specifics.

17        Q.      If I asked you this, I apologize.

18   Did the police officers confer with you about

19   here being transported?

20                 MS. BEN-SOREK:  Objection, asked

21              and answered.  You can answer.

22        A.      I don't recall.

23        Q.      And then you did and she was

24   transported in the ambulance; is that

25   correct?

1                    MATTHEW FIELD

2        A.        Yes, sir.

3        Q.        And you arrived at the medical

4    center?

5        A.        Yes.

6        Q.        And then did you speak to

7    somebody when you arrived?

8        A.        We speak to the triage nurse.

9        Q.        Do you remember the name of that

10   triage nurse?

11       A.        Just based off of my PCR again,

12   it looks like Carson.

13       Q.        And what did you say to the nurse

14   and what did the nurse say to you?

15       A.        I don't remember specifics.

16       Q.        Do you remember generally?

17       A.        Typically we tell them what

18   happened, which is reflected in the comments

19   portion of my PCR.

20       Q.        How long did you remain in the

21   hospital on this case?

22       A.        Physically in the hospital?

23       Q.        Yes?

24       A.        I don't recall.

25       Q.        Is it reflected in your memo

Page 28

1                        MATTHEW FIELD

2    book?

3        A.        Well, this gives the time that we

4    got to the hospital and the time I went back

5    in service.

6                    MS. BEN-SOREK:  You are pointing

7            to Exhibit 11, the PCR for that?

8                    THE WITNESS:  Right.

9        A.        I don't know if that whole 43

10   minutes I was physically inside the hospital.

11       Q.        So you were dispatched at 1412,

12   which is twelve minutes after two, right?

13       A.        Yes, sir.

14       Q.        And you were at the residence at

15   twenty-one minutes after the hour, correct?

16       A.        Yes, sir.

17       Q.        And you say you departed scene

18   twenty-seven minutes after the hour, so you

19   were in the residence or at the residence for

20   approximately six minutes?

21       A.        Yes, sir.

22       Q.        And then you arrived at the

23   medical center at 1447 or 2:47?

24       A.        Yes, sir.

25       Q.        Then it says clear 1530.

Page 29

1                    MATTHEW FIELD

2        A.      Yes.

3        Q.      What does clear mean?

4        A.      Back in service.

5        Q.      Does that mean you left the

6   hospital?

7        A.      Well, sometimes I go -- we have

8   to restock, but it doesn't necessarily mean

9   that I was in the hospital for that time

10  period.

11       Q.      Can you tell that by looking at

12  your memo book?

13       A.      It's going to reflect the same

14  time, sir.

15       Q.      After you arrived and spoke to

16  the triage nurse, did you speak to anyone

17  else at the hospital concerning this matter?

18       A.      I don't recall.

19       Q.      Again, I may have asked you this,

20  I'm not trying to trick you up.  Do you

21  recall what Ms. McCarthy's demeanor was in

22  the ambulance en route to the hospital?

23       A.      I don't recall, sir.

24       Q.      Now, you state in the patient

25  care report, you use the word depression; do

Page 30

1                    MATTHEW FIELD
2    you see that?
3         A.      Yes, sir?
4         Q.      What was your source of
5    information for that.
6         A.      Based off of the medications.
7         Q.      And who told you about the
8    medications?
9         A.      Again, I don't remember specific,
10   but typically it's the patient.
11        Q.      Do you remember Ms. McCarthy
12   being cooperative with you in furnishing you
13   this information?
14        A.      I don't remember specific, but if
15   she -- if I wrote it here I got it from her
16   and then that would mean that she was
17   compliant.
18        Q.      Were you there already when Ms.
19   McCarthy was told that she was going to have
20   to be transported to the hospital?
21        A.      I'm not sure what was said prior
22   to my arrival.
23        Q.      So you don't remember if it was
24   already known by Ms. McCarthy that she was
25   going to be transported before you got there?

1                    MATTHEW FIELD

2         A.       I don't recall, sir.

3         Q.       After you got there, do you

4    remember Ms. McCarthy being in an excited

5    state at all?

6         A.       I don't recall?

7         Q.       Other than this patient care

8    report, do you have any other document that

9    memorializes what happened that day?

10        A.       The only other documentation I

11   would have had would be my memo book, sir.

12        Q.       Do you ever give a statement to

13   the police department as to what happened?

14        A.       Yes, sir.

15        Q.       To whom did you give that

16   statement?

17        A.       I wrote a letter.

18        Q.       To whom did you give it.

19        A.       I believe the First Precinct

20   sergeant, sir.

21        Q.       Did you give it the same day or

22   sometime thereafter?

23        A.       It would have been sometime

24   thereafter.  I'm not sure.

25        Q.       For what purpose did you give

Page 32

1                    MATTHEW FIELD

2    this statement?

3         A.      He asked me for it, sir.

4         Q.      Did he tell you why he was asking

5    for it?

6         A.      Yes.

7         Q.      What did he say?

8         A.      That I was named in a lawsuit,

9    sir.

10        Q.      But you gave it to the sergeant;

11   is that correct?

12        A.      I believe so.

13               MR. WOLIN:  And I call for the

14          production of that.  I think there's

15          no privilege there.

16               MS. BEN-SOREK:  Take it under

17          advisement and, again, ask for a

18          written.

19        Q.      Other than this letter that you

20   gave to the sergeant, this patient care

21   report and the memo book, is there any other

22   written memorialization of what happened on

23   that day?

24        A.      To the best of my knowledge, no,

25   sir.

1                    MATTHEW FIELD

2        Q.      After May 28th, have you spoken

3    to Officer Amodeo about what happened that

4    day?

5        A.      I don't believe so, sir.

6        Q.      Have you spoken to Officer Stassi

7    about what happened that day?

8        A.      I do not believe so, sir.

9        Q.      Have spoken to anyone in the

10   department about what happened that day?

11       A.      The sergeant that I wrote the

12   letter to.

13       Q.      Other than that?

14       A.      No, sir.

15       Q.      What was the name of the

16   sergeant?

17       A.      I believe it was O'Mara.

18            MR. WOLIN:  I have no further

19        questions.

20            MR. SMITH:  Good afternoon, sir.

21        my name is Gerald Smith.  I am an

22        attorney for the school district and

23        some of its employees who are also

24        defendants in this lawsuit like

25        yourself.

Page 34

1                          MATTHEW FIELD

2    EXAMINATION BY

3    MR. SMITH:

4         Q.      On May 28th, did you speak to any

5    employees of the Roosevelt Union Free School

6    District regarding Ms. McCarthy?

7         A.      No, sir.

8              MR. SMITH:  I have nothing

9         further.

10             MS. BEN-SOREK:  Can I have a

11        couple of questions?

12             MR. WOLIN:  Sure.

13   EXAMINATION BY

14   MS. BEN-SOREK:

15        Q.      AMT Field, at any time did Ms.

16   McCarthy mention anything about any other

17   physical complaint, other than a headache?

18        A.      I don't recall specific, but if

19   she did, it would have been documented on my

20   PCR.

21        Q.      Is there anything documented on

22   your PCR about a complaint of chest pain?

23        A.      No, sir.

24             MS. BEN-SOREK:  Thank you.

25             MR. WOLIN:  I have nothing

Page 35

1                    MATTHEW FIELD
2          further.
3                 (Whereupon, at 4:25 p.m.
4                 these proceedings were
5                 concluded.)
6
7          - - - - - - - - - - - - - - - - - - - - - - - - - - - -
           MATTHEW  FIELD
8
   Subscribed and sworn to
9
   before me on this _____day
10
   of _____, 2016.
11
12 _____
                 NOTARY  PUBLIC
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 36

                           I N D E X

WITNESS          EXAMINATION BY       PAGE    LINE

MATTHEW FIELD  MR.  WOLIN                6       4

               MR.  SMITH              34       4

               MS.  BEN-SOREK          34      15

REQUESTS                              PAGE    LINE

Provide requested documentation        32      13


              INDEX TO PLAINTIFF'S EXHIBITS

EXHIBIT          DESCRIPTION           PAGE    LINE

16                  Memo book           7      18

Page 37

1

2                              CERTIFICATION

3

4          I, RAYMOND P. STALKER, a notary public in and

5     for the State of New York, do hereby certify:

6          THAT the witness whose testimony is hereby

7     before set forth, was duly sworn by me; and

8     that the within transcript is a true record of the

9     testimony given by said witness.  I further certify

10    that I am not related, either by blood or marriage,

11    to any of the parties to this action; and

12         THAT I am in no way interested in the outcome

13    of this matter.

14         IN witness whereof, I have hereunto set my

15    hand this 20th day of May, 2016.

16

17

18

                        RAYMOND P. STALKER

19

20

21

22

23

24

25

Page 38

1

2                        ERRATA SHEET

              VERITEXT/NEW YORK REPORTING, LLC

3                        1-800-727-6376

4     330 Old Country Road,    1250 Broadway

      Mineola New York           New York, New York

5

6     Name of Case: McCARTHY v ROOSEVELT, et al

      Date of Deposition:  5/12/16

7     Name of DEPONENT:  MATTHEW FIELD

8     PAGE LINE                CHANGE              REASON

9     --- ---    ----------------------    ---------

10    --- ---    ----------------------    ---------

11    --- ---    ----------------------    ---------

12    --- ---    ----------------------    ---------

13    --- ---    ----------------------    ---------

14    --- ---    ----------------------    ---------

15    --- ---    ----------------------    ---------

16    --- ---    ----------------------    ---------

17    --- ---    ----------------------    ---------

18    --- ---    ----------------------    ---------

19    --- ---    ----------------------    ---------

20                              _____

                               MATTHEW FIELD

21

22    SUBSCRIBED AND SWORN TO BEFORE

23    ME THIS ___DAY OF_____, 2016.

24    _____    _____

      NOTARY PUBLIC            COMMISSION EXPIRES

25

[& - class]                                                                 Page 1

| & | | | |
|---|---|---|---|

**&**

**&** 3:3,7

**0**

**0700** 10:7

**1**

**1-10** 1:9 3:9
**1-800-727-6376** 38:3
**10601** 3:10
**11** 7:5 28:7
**11-20** 1:15 3:16
**11501** 3:17 6:10
**11753** 3:4
**12** 1:20
**1250** 38:4
**13** 36:8
**1412** 28:11
**1447** 28:23
**1490** 6:9
**15** 36:6
**1530** 28:25
**16** 7:16,19 36:12
**18** 36:12
**1900** 10:7

**2**

**2009** 8:7
**2011** 8:15 9:4
**2014** 9:16 10:3
  11:10
**2016** 1:20 35:10
  37:15 38:23
**20th** 37:15
**233** 13:10
**240** 1:18
**28th** 10:3 11:10,19
  12:24 33:2 34:4
**2:47** 28:23

**3**

**32** 36:8
**330** 38:4
**34** 36:5,6
**3:56** 1:20

**4**

**4** 36:5,5
**420** 3:4
**43** 28:9
**445** 3:10
**4:25** 35:3

**5**

**5/12/16** 38:6

**6**

**6** 36:5

**7**

**7** 36:12

**a**

**able** 12:16 19:18
**academy** 8:25 9:5,6
**acronym** 9:8
**act** 23:4
**acting** 15:19,21 16:3
  17:4 23:2,3,5,6,9
**action** 37:11
**address** 6:8
**advisement** 32:17
**afternoon** 5:16
  33:20
**aggressive** 23:5
**aggressively** 23:10
**agitated** 23:5,7
**ago** 6:17
**agreed** 4:5,9,12
**al** 38:6
**alan** 3:5 5:16
**ambulance** 11:21
  17:22 18:4,12 24:16
  26:24 29:22
**ambulances** 11:24
**amendments** 5:14
**amodeo** 1:12 3:15
  5:9 12:11 33:3
**amt** 5:12 9:8,10,17
  24:14 25:2,23 26:9
  34:15
**answer** 15:24 16:25
  19:2 22:17 24:2

26:15,21
**answered** 26:21
**anybody** 6:18 16:6
**apologize** 26:17
**approximately**
  12:15 28:20
**arms** 16:8
**arrival** 19:25 30:22
**arrive** 24:21
**arrived** 11:25 12:7
  12:18,24 13:10 14:7
  17:9,13 27:3,7
  28:22 29:15
**asked** 26:17,20
  29:19 32:3
**asking** 5:19 25:6,7,9
  32:4
**assigned** 12:4
**associates** 3:7
**assume** 20:10 21:16
**attempt** 5:25
**attention** 10:3
**attorney** 5:17 33:22
**attorney's** 3:13
**attorneys** 3:3,7,13
**avenue** 3:10 6:10
  10:9 11:7,11,19
  13:11

**b**

**back** 9:16 18:5 28:4
  29:4
**background** 9:19
**bad** 20:13 22:5
**based** 17:14 26:11
  27:11 30:6
**believe** 12:8 15:13
  21:18 22:23 31:19
  32:12 33:5,8,17
**ben** 3:18 5:6 15:23
  16:24 17:11 18:24
  19:13 22:16 23:25
  25:5,12,16 26:2,8
  26:15,20 28:6 32:16
  34:10,14,24 36:6

**best** 5:25 10:23 13:5
  32:24
**blood** 19:19,22
  37:10
**book** 7:11,14,20
  28:2 29:12 31:11
  32:21 36:12
**braswell** 1:7 3:8
**broadway** 38:4
**brought** 5:19
**bureau** 10:14,15
**business** 6:7

**c**

**c** 3:2 21:16
**call** 18:11 24:14
  25:4 32:13
**calls** 12:4
**calm** 14:17,21 17:9
  18:19
**capacity** 1:7,8,9,12
  1:13,14
**car** 18:8
**care** 6:25 7:5 9:2
  20:13 22:6 29:25
  31:7 32:20
**career** 8:12
**carson** 27:12
**case** 24:6,10 27:21
  38:6
**cases** 16:21
**center** 23:15 27:4
  28:23
**certification** 4:7
  37:2
**certify** 37:5,9
**chair** 15:16
**change** 38:8
**changed** 9:12
**chest** 34:22
**circumstances** 5:21
  15:7
**civil** 2:8 5:10
**class** 21:17,22

[classified - further]    Page 2

classified  17:5
clear  28:25 29:3
clyde  1:7 3:8
come  10:8 11:10,13
  21:4
comment  19:24 22:4
comments  21:25
  23:2 27:18
commission  38:24
communication
  10:15
communications
  8:18 10:14
complaint  34:17,22
compliant  30:17
concerning  5:20
  29:17
concluded  35:5
confer  26:18
considered  9:10
control  24:22
conversation  18:14
convicted  9:23
cooperative  30:12
copies  5:10
copy  7:10
correct  8:20 15:12
  26:25 28:15 32:11
corrections  5:14
counsel  4:6 6:19
country  38:4
county  1:11,11,14
  3:13,14,14,15 8:3,5
  8:9,12
couple  9:19 34:11
court  1:2 4:15
crime  9:24
critical  9:2
currently  7:25

**d**

d  5:2 36:3
date  7:17 38:6
day  10:4,7 12:13
  26:13 31:9,21 32:23

33:4,7,10 35:9
  37:15 38:23
dealt  16:15
deborah  1:6 3:8
defendants  1:17 2:6
  2:7 3:7,13 5:2 33:24
defense  5:9
demeanor  14:14
  16:20,23 29:21
denton  1:18
departed  28:17
department  1:11
  3:14 8:3,6,9,20 9:3
  25:14 31:13 33:10
deponent  38:7
deposition  2:5 4:8
  4:13 5:8 6:12,20,23
  7:9,23 38:6
depression  29:25
describe  14:14
description  36:11
determination
  23:22 25:24
determine  24:15
dictated  17:20
die  20:13 22:6
different  16:21
direct  10:2
disabled  15:9 22:24
discretion  24:21,25
discussion  23:13
dispatched  10:9,12
  12:4 28:11
dispatcher  10:18
dispatches  10:18
display  16:12,19
displaying  16:5
district  1:2,2,6,9 3:8
  3:9 33:22 34:6
disturbed  16:13,16
  16:23 22:15,24
  26:12
document  13:7 31:8
documentation
  14:24 15:2 31:10

36:8
documented  14:23
  15:14 18:17 21:25
  22:2 34:19,21
documents  6:22 7:9
  7:23 13:6
doe  1:9,10,15,15 3:9
  3:16
doing  16:11
drive  11:23 24:16,18
  24:20
driven  18:8
driving  11:21 17:24
drove  18:3
duly  5:3 37:7
duties  9:14

**e**

e  3:2,2,5 5:2,2 36:3
eastern  1:2
edith  1:8 3:9
effect  4:14
effort  19:21
either  12:19 13:18
  13:21,25 14:22
  17:25 23:17 37:10
emergency  8:25
emotions  16:5
employed  8:2,5
employees  1:9,14
  3:9,15 33:23 34:5
en  17:19 18:18
  29:22
enabled  5:11
encounter  12:2
encounters  16:19
entire  8:12
errata  38:2
esq  3:5,11,18
et  38:6
exactly  25:19
examination  6:2
  34:2,13 36:4
examined  5:4

excerpt  7:19
excited  31:4
exhibit  7:5,16,19
  28:7 36:11
exhibits  36:10
expert  25:14
expires  38:24
explain  16:4

**f**

f  5:2
facts  5:20
fancy  11:16
february  8:15
federal  2:7
feels  26:9
female  13:13 20:2
fictitious  1:10,15
field  1:13,23 2:5
  3:15 5:1,7 6:1,6 7:1
  8:1 9:1 10:1 11:1
  12:1 13:1 14:1 15:1
  16:1 17:1 18:1 19:1
  20:1 21:1 22:1 23:1
  24:1 25:1 26:1 27:1
  28:1 29:1 30:1 31:1
  32:1 33:1 34:1,15
  35:1,7 36:5 38:7,20
fire  8:24 9:6 10:14
first  5:3 14:11 31:19
flailing  16:8
follows  5:5
force  4:14
form  4:10 15:19,24
  19:14 22:17 26:12
forth  37:7
found  19:25
franklin  6:10
free  1:6,9 3:8 34:5
freeport  10:10 11:8
  11:12,19
full  6:4
furnishing  30:12
further  4:9,12 33:18
  34:9 35:2 37:9

**g**

generally  14:20 27:16
gerald  3:11 33:21
give  12:16 31:12,15 31:18,21,25
given  37:9
gives  28:3
go  20:9 24:17 29:7
goes  24:15
going  9:16 11:22 18:5 21:16,22 29:13 30:19,25
good  5:16 33:20
guess  18:11

**h**

h  5:2
hamilton  3:10
hand  37:15
handcuff  15:8
handcuffed  15:6
happened  12:24 13:10 27:18 31:9,13 32:22 33:3,7,10
hard  17:2
head  20:12 22:5
headache  21:13 34:17
headquarters  6:9
held  2:8
hereto  4:6
hereunto  37:14
higgins  1:8 3:9
hired  9:4
homicidal  22:25
hospital  17:19,23,25 18:19 24:15,18,19 25:25 27:21,22 28:4 28:10 29:6,9,17,22 30:20
hour  28:15,18
house  22:10
hurt  13:14

hurts  20:12 22:5

**i**

identification  7:16
included  9:4
independently  13:6
index  36:10
indicating  17:8
individually  1:6,7,8 1:12,13,14
information  20:16 20:18 30:5,13
inside  28:10
interested  37:12
irrational  17:4 23:2 23:3,4
issue  22:19

**j**

jericho  3:4,4
job  8:8,11,17 9:14 9:16
john  1:9,10,15,15 3:9,16
joseph  1:11 3:14

**k**

kill  13:23 14:4 20:3 20:25 21:5
know  22:19 25:10 25:20,21 28:9
knowledge  10:23 32:24
known  30:24

**l**

l  1:6 3:8 5:2 21:16
law  25:21
lawsuit  5:18,21 32:8 33:24
lawyers  11:17
lead  22:23
left  29:5
legs  16:9
letter  31:17 32:19 33:12

line  36:4,7,11 38:8
liora  3:18
llc  38:2
location  10:13 11:7 13:11
long  8:4,14 27:20
look  13:7
looked  7:10
looking  13:4,6 29:11
looks  7:7,21 27:12

**m**

m  5:2
making  23:21
mark  7:12
marked  7:4,14,18
marriage  37:10
matter  29:17 37:13
matthew  1:13,23 2:5 3:15 5:1,7 6:1,6 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 35:7 36:5 38:7,20
mccarthy  1:3 5:18 13:22 14:2,9 17:12 18:11 22:10 26:14 30:11,19,24 31:4 34:6,16 38:6
mccarthy's  29:21
mean  15:4 16:2 22:21 29:3,5,8 30:16
meaning  11:13 20:18
means  21:17
medic  1:13 3:15 5:7 8:10,14,23
medical  8:25 23:15 27:3 28:23

medications  30:6,8
meet  6:16
memo  7:10,14,19 27:25 29:12 31:11 32:21 36:12
memorialization  32:22
memorializes  31:9
mental  16:22 17:6 22:24
mentally  15:9 16:13 16:15 22:14,24 26:12
mention  34:16
mentioned  2:8 7:14
met  6:15 12:12
mineola  3:17 6:10 38:4
minutes  28:10,12,15 28:18,20
monique  1:12 3:15
month  6:17

**n**

n  3:2 36:3
name  1:10,15 5:16 6:4 27:9 33:15,21 38:6,7
named  32:8
names  1:10,15
nassau  1:11,11,14 3:13,14,14,15 8:3,5 8:9,12
necessarily  29:8
need  5:13
new  1:2,19 2:10 3:4 3:10,17 5:4 6:10 37:5 38:2,4,4,4
normally  24:7
notary  2:9 4:13 5:3 35:12 37:4 38:24
number  12:17
nurse  27:8,10,13,14 29:16

| o | | | |
|---|---|---|---|

**o**

o'mara  33:17
oath  9:21
objection  15:23
  16:24 17:11 18:24
  19:13 22:16 23:25
  25:6 26:20
objections  4:10
observe  15:11 23:6
  23:9
obtain  19:18
obviously  24:21
office  3:13
officer  1:11,12 3:14
  3:15 5:9 12:11
  13:21 15:8 17:23
  18:7 24:8 25:24
  26:5 33:3,6
officers  5:12 12:2,3
  12:6,10,20 13:16,18
  13:23,25 14:3,7
  20:7 22:7,11 23:14
  23:17,23 24:12,17
  24:22 25:4,20 26:18
official  1:7,8,8,12,13
  1:14
oh  6:17
old  20:2 38:4
once  9:4
operator  8:18
opinion  23:18 26:13
outcome  37:12
overrule  25:24

**p**

p  3:2,2 20:9 37:4,18
p.c.  3:3
p.m.  1:20 35:3
page  36:4,7,11 38:8
pain  34:22
parties  4:6 37:11
patient  6:25 7:5
  20:10,21 29:24
  30:10 31:7 32:20

patrol  18:8
pcr  6:24 13:2 17:14
  17:18 18:5 21:3,7
  21:10 27:11,19 28:7
  34:20,22
people  16:16 22:15
  22:18,22,22 26:12
period  29:10
permitted  25:23
person  25:2 26:6,7
pertaining  5:6
phrase  11:17
physical  34:17
physically  27:22
  28:10
place  1:18 2:9
plains  3:10
plaintiff  1:4 2:6 3:3
plaintiff's  7:15
  36:10
please  6:4 7:12
po  18:6
pointing  28:6
police  1:11,11,12
  3:14,14,15 5:8 6:9
  8:3,5,9,10,19,24 9:3
  9:5,6 12:2,3,6,9,19
  13:12,16,18,21,22
  13:25 14:3,7 15:8
  18:7 20:2,7 22:7,10
  23:13,17,23 24:8,11
  24:17,22 25:3,20,24
  26:5,18 31:13
policy  19:14,15
portion  9:3 18:12
  19:24 21:25 27:19
portray  16:23
practice  19:15
precinct  31:19
prepare  6:12,19,23
  7:9,23 17:18
presence  14:3 20:22
  20:24 21:2 22:6
present  6:7 22:11

presently  1:10,16
pressure  19:19,22
prior  5:7 6:13 8:16
  30:21
privilege  32:15
probably  6:17
procedure  2:8 15:10
  25:7,10,13,15,16
procedures  25:21
proceedings  35:4
production  32:14
protocol  19:11
provide  36:8
psychologist  13:13
  20:3
public  2:10 4:14 5:4
  35:12 37:4 38:24
purpose  31:25
pursuant  2:7

**q**

question  4:10 5:23
questions  5:20 9:20
  33:19 34:11

**r**

r  3:2
raymond  2:9 37:4
  37:18
reason  38:8
recall  10:17 12:21
  13:20 14:5,8,13,16
  15:17,18,20 16:7,10
  16:14 17:7,10,17
  18:2,16,20 19:10,23
  21:23 22:3,8,12
  23:8,11,16,20 24:5
  26:16,22 27:24
  29:18,21,23 31:2,6
  34:18
received  8:23
recollection  13:4,8
  25:8,11,17
record  6:5 26:9 37:8
reference  19:16
  22:14

referring  7:20
reflect  19:5 21:7
  29:13
reflected  18:22
  27:18,25
refresh  13:3,7
regarding  34:6
related  37:10
remain  27:20
remember  10:24
  11:3 12:9,23,25
  13:15 14:17,18,20
  18:3 20:6 22:14
  24:9 27:9,15,16
  30:9,11,14,23 31:4
rephrase  5:24 11:9
report  7:2,5 11:18
  15:22 18:23 19:4
  29:25 31:8 32:21
reported  11:6
reporter  7:15
reporting  38:2
represent  5:17
request  5:10
requested  36:8
requests  36:7
reserved  4:11
residence  28:14,19
  28:19
respective  4:6
responded  11:11
responsible  23:21
  24:3,7,11
restock  29:8
restrain  22:19
restrained  14:22,25
  15:5,12
review  5:12 6:22 7:8
  7:22
reviewed  7:6
right  5:15 21:6,8
  24:23 25:19 26:7
  28:8,12
road  38:4

**roosevelt** 1:6,9,19
 3:8 34:5 38:6
**route** 17:19 18:18
 29:22
**rpr** 2:9
**rules** 2:7 5:10

**s**

**s** 3:2,11 21:16,16
**saw** 14:12,15 15:15
 15:18
**says** 18:6 26:5 28:25
**scene** 10:19 11:25
 12:7,18 23:24 24:23
 28:17
**school** 1:6,9 3:8
 13:13 20:3 33:22
 34:5
**sealing** 4:7
**see** 5:13 14:9,23
 20:4,13 30:2
**separate** 17:5
**sergeant** 31:20
 32:10,20 33:11,16
**served** 8:11
**service** 28:5 29:4
**set** 37:7,14
**seven** 28:18
**shape** 15:19
**sheet** 38:2
**show** 7:4,18
**signature** 37:17
**signed** 4:13,14
**signs** 16:12
**silverman** 3:7
**sir** 6:21,24 7:3,21
 8:21 9:9,15,18,22
 9:25 10:5,11,20
 11:5,15,20,23 12:14
 12:17 14:10 15:3
 16:14,17 18:13,25
 19:3,6,8,20 20:5,8
 20:11,15,23 21:11
 21:14,20 22:3 23:20
 24:24 27:2 28:13,16

28:21,24 29:14,23
 30:3 31:2,11,14,20
 32:3,9,25 33:5,8,14
 33:20 34:7,23
**sitting** 15:16 18:10
**situation** 10:22,25
 18:2
**six** 28:20
**sixty** 19:25
**smith** 33:20,21 34:3
 34:8 36:5
**smtih** 3:11
**somebody** 14:21
 16:22 17:3,3 22:20
 25:25 27:7
**sorek** 3:18 5:6 6:15
 15:23 16:24 17:11
 18:24 19:13 22:16
 23:25 25:5,12,16
 26:2,8,15,20 28:6
 32:16 34:10,14,24
 36:6
**sorry** 15:25
**source** 20:16,18
 30:4
**speak** 6:11,18 12:19
 17:12 22:9,18,22
 27:6,8 29:16 34:4
**specific** 18:2,16 24:5
 24:10 25:11 30:9,14
 34:18
**specifically** 12:21,23
 14:19
**specifics** 17:17
 26:16 27:15
**spoke** 29:15
**spoken** 33:2,6,9
**sportsman** 10:9
 11:11,18 13:11
**sportsman's** 11:7
**stalker** 2:9 37:4,18
**standing** 15:16
**stassi** 1:11 3:14
 12:11 18:6 33:6

**state** 2:10 5:4 6:4
 19:25 29:24 31:5
 37:5
**stated** 13:12 21:2
**statement** 17:3
 20:17 31:12,16 32:2
**states** 1:2 20:12
**stating** 20:2
**stipulated** 4:5,9,12
**street** 3:16
**subscribed** 35:8
 38:22
**suicidal** 22:25
**sure** 15:10 22:8
 30:21 31:24 34:12
**susan** 1:3
**sworn** 4:15 5:3 35:8
 37:7 38:22

**t**

**t** 5:2,2 20:9
**take** 19:7,11,17,19
 19:21 32:16
**taken** 2:6
**technician** 9:2
**tell** 10:21 13:9,21
 14:2 21:19,21 27:17
 29:11 32:4
**testified** 5:5 9:20
**testify** 13:5 25:13
**testimony** 5:13 37:6
 37:9
**thank** 34:24
**think** 32:14
**threatening** 16:6
**time** 2:8 4:11 5:22
 7:13 10:8,16 11:6
 11:10,13 28:3,4
 29:9,14 34:15
**times** 12:15
**title** 8:8,11,17 9:12
**today** 6:12
**told** 13:13,22 14:2
 20:2,7 21:12 30:7
 30:19

**tour** 10:6,7
**training** 8:22 9:5
 22:13 26:11
**transcript** 37:8
**transcripts** 5:11
**transport** 26:6,6
**transported** 23:15
 23:19,23 25:3 26:14
 26:19,24 30:20,25
**transporting** 25:25
**triage** 27:8,10 29:16
**trial** 4:11
**trick** 29:20
**true** 1:10,15 37:8
**truly** 16:22
**trying** 29:20
**turnpike** 3:4
**twelve** 28:12
**twenty** 28:15,18
**two** 17:4 19:25
 28:12
**type** 10:21 16:20
 17:21
**typed** 17:22
**types** 17:5
**typically** 12:22
 14:22 18:9 27:17
 30:10

**u**

**understand** 5:23
 16:2
**understanding** 26:3
 26:4,10
**union** 1:6,9 3:8 34:5
**united** 1:2
**unknown** 1:10,16
**untoward** 18:22
**unusual** 18:21
**upset** 14:18 21:15
 21:22
**use** 29:25
**usually** 16:18,19

**[v – york]**

| v |
|---|
| **v**  38:6 |
| **vehicle**  18:12 |
| **veritext**  38:2 |
| **vitals**  19:7,12,16,17 |

| w |
|---|
| **w**  5:2 |
| **waived**  4:8 |
| **want**  10:2 21:5 |
| **wanted**  13:14,23 |
| 14:4 20:3,25 |
| **way**  11:16 15:19 |
| 17:23 37:12 |
| **went**  8:24 9:2 28:4 |
| **west**  3:16 |
| **whereof**  37:14 |
| **white**  3:10 |
| **witness**  1:23 19:14 |
| 28:8 36:4 37:6,9,14 |
| **wolin**  3:3,3,5 5:15 |
| 5:17 6:3 7:12 25:9 |
| 25:15,19 32:13 |
| 33:18 34:12,25 36:5 |
| **word**  29:25 |
| **words**  13:9 21:5 |
| **work**  10:7 |
| **working**  10:3,6 |
| **wortham**  1:6 3:8 |
| **written**  32:18,22 |
| **wrote**  13:2 21:3 |
| 30:15 31:17 33:11 |

| x |
|---|
| **x**  1:3,17 36:3 |

| y |
|---|
| **year**  19:25 |
| **yelling**  16:11 |
| **york**  1:2,19 2:10 3:4 |
| 3:10,17 5:4 6:10 |
| 37:5 38:2,4,4,4 |

Veritext Legal Solutions
www.veritext.com

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2014. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.