# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 15-CV-01468 (JFB) (SIL)

S<small>USAN</small> M<small>C</small>C<small>ARTHY</small>,

Plaintiff,

V<small>ERSUS</small>

R<small>OOSEVELT</small> U<small>NION</small> F<small>REE</small> S<small>CHOOL</small> D<small>ISTRICT, ET AL.</small>,

Defendants.

**MEMORANDUM AND ORDER**
September 19, 2017

JOSEPH F. BIANCO, District Judge:

Susan McCarthy ("McCarthy" or "plaintiff") is an elementary school teacher. On May 28, 2014, while classes were in session, school officials allege, and McCarthy disputes, that she threatened to kill herself. School officials excused her for the remainder of the day and informed local police officers, who hospitalized McCarthy against her will for a psychiatric evaluation. McCarthy then initiated this action against two groups of defendants. The first group is composed of Roosevelt Union Free School District (the "District"), Superintendent Dr. Deborah Wortham, Principal Clyde Braswell, and Assistant Principal Edith Higgins (collectively, the "School Defendants"). The second group is composed of Nassau County and police officers Joseph Stassi and Monique Amodeo (collectively, the "County Defendants").[1] McCarthy asserts sixteen claims under state law and federal law, ranging from discrimination to false arrest and false imprisonment. Essentially, she alleges that Officers Stassi and Amodeo hospitalized her without probable cause and that the School Defendants encouraged the officers because she is white and in her sixties.

Pending before the Court are motions for

---

[1] The Clerk of the Court is directed to terminate the Nassau County Police Department and medic Matthew Field as defendants. First, the Police Department is a non-suable entity because it is an "administrative arm," which does "not have a legal identity separate and apart from the municipality." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012). Second, at oral argument, McCarthy's lawyer agreed to dismiss Field from the case.

summary judgment filed by the County Defendants (ECF No. 33) and the School Defendants (ECF No. 28). They previously filed cross-claims against each other for indemnity.

For the reasons set forth below, the County Defendants' motion is granted in part and denied in part. Specifically, summary judgment is unwarranted on the false arrest and false imprisonment claims. Viewing the facts in a light most favorable to McCarthy, a reasonable jury could find that Officers Stassi and Amodeo lacked probable cause to detain and hospitalize her.

However, the Court grants the School Defendants' motion in its entirety. As for the discrimination claims, there is no evidence in the record from which a rational jury could find that any of the School Defendants' actions in this case were motivated by discrimination. In fact, at oral argument, McCarthy's lawyer acknowledged that he could point to no such evidence in the record. With respect to the false arrest claims, McCarthy failed to present evidence that the School Defendants were present at the "arrest" or that they instigated the officers' actions. For similar reasons, the Court grants summary judgment on the County Defendants' cross-claim for indemnity against the School Defendants.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' 56.1 statements and their exhibits.[2]

---

[2] Citations to the record are as follows: the School Defendants' 50-h hearing (ECF No. 31-2); Clyde Braswell's deposition (ECF No. 31-9); Officer Joseph Stassi's deposition (ECF No. 31-3); the County Defendants' 56.1 statement (ECF No. 34); Officer Stassi's case summary report (ECF No. 35-3); the County Defendants' 50-h hearing (ECF No. 35-4);

Unless otherwise noted, these facts are undisputed or uncontroverted by admissible evidence. The Court construes the facts in the light most favorable to the non-moving party, and it draws all inferences in her favor. *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

During the 2013-14 school year, Susan McCarthy was a first-grade teacher at Washington Rose Elementary School. (Pl.'s 56.1 Counterstmt. ¶¶ 50, 55.) She claims that newly appointed school officials targeted her because of her age and race. (*Id.* ¶¶ 55–62.) She is white and in her sixties, and Principal Braswell and Assistant Principal Higgins are both black. (*Id.* ¶¶ 49, 54.) Plaintiff alleges, for example, that she received constant criticism and was assigned an overwhelming number of students. This environment caused her "great stress," and she "felt sick every night." (*Id.* ¶¶ 61–63.)

On May 28, 2014, Principal Braswell called a meeting with the first-grade teachers and informed McCarthy that a troubled student was rejoining her class. (*Id.* ¶ 70.) When plaintiff challenged the decision, Principal Braswell scolded McCarthy and told her that she was ostracizing the child. (*Id.* ¶ 71.) That interaction caused McCarthy to leave the meeting and cry in the hallway, and when a substitute teacher tried to comfort her, McCarthy screamed at full volume. (*Id*. ¶ 72; Cnty.'s 56.1 Stmt. ¶¶ 9, 14, 16, 23.) She testified that she suffered a "full blown panic attack" and experienced a migraine and chest pains. (Pl.'s Dep. at 23.) The migraine was so painful that plaintiff felt like she was going to die. (Cnty. 50-h Hr'g at 23–24.) A co-worker then retrieved a wheelchair and escorted McCarthy to the nurse's office. (50-h Hr'g at

---

Susan McCarthy's deposition (ECF No. 35-5); Edith Higgins's deposition (ECF No. 35-6); Officer Monique Amodeo's deposition (ECF No. 36); and Susan McCarthy's 56.1 counterstatement (ECF No. 43).

24; Pl.'s 56.1 Counterstmt. ¶ 74.)

The parties dispute what happened after McCarthy's arrival at the nurse's office. Assistant Principal Higgins claims that in the nurse's office, McCarthy said, "Oh, I just want to kill myself." (Higgins Dep. at 87.) McCarthy asserts that this statement was never made; instead, she contends that Higgins asked plaintiff if she would "hurt herself" and McCarthy said, "[O]f course, not." (Pl.'s 56.1 Counterstmt. ¶ 78.) However, the parties agree that McCarthy discussed her history of depression and panic attacks (Cnty.'s 56.1 Stmt. ¶ 20), and that she recounted a previous joke where she threatened to jump out of the window on the ground floor (Pl.'s 56.1 Counterstmt. ¶¶ 80, 85). After a short while, McCarthy left the school premises and went to her sister's home. (*Id.* ¶¶ 86, 88.)

According to the School Defendants, Assistant Principal Higgins informed Principal Braswell about McCarthy's threat, and as a result, he notified his supervisor, Dr. Marnie Hazelton. (School Defs.' 56.1 Stmt. ¶¶ 59–60.) Three hours later, Dr. Hazelton instructed Principal Braswell to contact law enforcement.[3] (Braswell Dep. at 33–34, 37, 61–63.) Then, on Principal Braswell's instructions, Assistant Principal Higgins called the County's school resource officers: Officers Monique Amodeo and Joseph Stassi (the "Officers"), who act as liaisons between the school district and the police department. (Higgins Dep. at 151; Cnty.'s 56.1 Stmt. ¶¶ 2–4.) Over the phone, Assistant Principal Higgins told them that a teacher said, "Oh, I feel like killing myself." (Higgins Dep. at 118.)

---

[3] The parties largely agree on when the events took place. The incident occurred between 9:30 a.m. and 10:45 a.m., and Officers Amodeo and Stassi were notified around 1:30 p.m. (*Compare* Case Summ. Report at 3 *with* Pl.'s 56.1 Counterstmt. ¶¶ 88, 93.)

After arriving at the school, the Officers spoke with Principal Braswell, Assistant Principal Higgins, the school psychologist, and an unnamed friend of McCarthy's. (Amodeo Dep. at 48.) Assistant Principal Higgins, for instance, told them that McCarthy was "very upset and out of control." (Stassi Dep. at 33.) According to Assistant Principal Higgins, she also described McCarthy as a "lovely lady" with a playful demeanor, and Assistant Principal Higgins explained that McCarthy was not dangerous nor threatening. (Higgins Dep. at 124–25, 127–28.) However, the Officers state that Assistant Principal Higgins never informed them that McCarthy was calm. (Stassi Dep. at 34, 58; Amodeo Dep. at 34–35, 44–45.)

After receiving McCarthy's sister's address from a school teacher, the Officers traveled to the sister's home. (Higgins Dep. at 126.) Upon arrival, they spoke with the sister, who invited them into her house to interview McCarthy; as the Officers discussed the events with McCarthy, she became more and more agitated, and the Officers state that she corroborated the fact that she threatened to kill herself. (Stassi Dep. at 64–65.) McCarthy, however, disputes that she made such a threat. (*See* Pl.'s Counterstmt. 56.1 Stmt. ¶¶ 78–81.) Based on the Officers' assessment, an ambulance was called to transport McCarthy to a local hospital; the ambulance arrived around 2:45 p.m., and McCarthy stayed at the hospital for several hours. (Pl.'s 56.1 Counterstmt. ¶ 135.)

On or about June 17, 2014, following her hospitalization, McCarthy received a letter from Dr. Deborah Wortham, the school superintendent notifying plaintiff that she needed to undergo an examination to determine whether she was mentally fit for work. (Pl.'s 56.1 Counterstmt. ¶ 149.) McCarthy passed the assessment and returned

to work as a first-grade teacher for the 2014–15 school year. (*Id*. ¶¶ 153–55.)

B.  Procedural History

McCarthy filed this lawsuit on March 20, 2015. (ECF No. 1.) The County Defendants and the School Defendants each moved for summary judgment on November 7, 2016. (ECF Nos. 28, 33.) McCarthy submitted her opposition on January 17, 2017. (ECF Nos. 44, 47.) The School Defendants replied on February 3, 2017 (ECF No. 52), and the County Defendants replied on February 10, 2017 (ECF No. 53). The Court heard oral argument on April 13, 2017 (ECF No. 55) and has fully considered the parties' submissions.

II.  STANDARD OF REVIEW

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed.

*R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

McCarthy raises several claims against all defendants: (1) false arrest under Section 1983, (2) procedural due process, (3) substantive due process, (4) due process liberty interest, (5) unreasonable search and seizure in violation of the Fourth Amendment, (6) conspiracy under Section 1983, (7) assault under New York law, (8) false imprisonment under New York law, (9) intentional infliction of emotional distress under New York law, and (10) violation of the Mental Hygiene Law.[4]

The centerpiece of her case is the involuntary hospitalization—that is, her allegedly false arrest. As a threshold matter, several claims are duplicative and will be construed as one claim for false arrest under Count V: (1) procedural due process, (2) substantive due process, (3) due process liberty interest, (4) unreasonable search and seizure, (5) false arrest under Section 1983,[5] and (6) intentional infliction of emotional distress.[6] *See Simon v. City of New York*, No. 14-CV-8391 (JMF), 2017 WL 57860, at *5 (S.D.N.Y. Jan. 5, 2017) (taking a similar approach); *Soliman v. City of New York*, No. 15-CV-5310 (PKC) (RER), 2017 WL 1229730, at *10 n.12 (E.D.N.Y. Mar. 31, 2017) (same). "[T]he Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest," *Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015), and McCarthy has failed to present any evidence how her

---

[4] As detailed below, McCarthy also asserts negligence claims against the County Defendants and discrimination claims against the School Defendants.

[5] The Court recognizes that false arrest and false imprisonment claims are "synonymous" for purposes of the legal analysis. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). However, McCarthy filed her false arrest claim under Section 1983 and her false imprisonment claim under New York law. Unlike Section 1983, New York law permits theories of vicarious liability against municipalities. *See Sankar v. City of New York*, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012). Accordingly, the Court treats these as two separate claims.

[6] McCarthy's intentional infliction of emotional distress ("IIED") claim "fails as a matter of law because it overlaps with traditional tort theories of liability," namely, her false imprisonment claim. *See Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 483 (E.D.N.Y. 2016); *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014) ("Here, the facts supporting plaintiff's IIED claim are the very same facts that support his claims for malicious prosecution, as well as assault and battery. Consequently, defendants are entitled to summary judgment on the IIED claim."). It is true that McCarthy alleges emotional distress and professional damage, *see Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015), but she repeats these allegations verbatim under her false imprisonment claim, (*compare* Compl. ¶ 154, *with id.* ¶ 158). In any event, no rational juror could find that either the County or the School Defendants engaged in "extreme or outrageous" conduct sufficient to establish IIED liability. *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 278 (E.D.N.Y. 2000) ("Evidence of lack of probable cause that would support a claim for false arrest or malicious prosecution, however, is not sufficient to support an IIED claim, unless there is also evidence that the arrest or prosecution was accompanied by "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." (citing *Murphy v. Cnty. of Nassau*, 609 N.Y.S.2d 940, 942 (App. Div. 2d Dep't 1994) (denying summary judgment on false arrest and malicious prosecution claims, but granting summary judgment on IIED claim)).

additional claims differ in any way. (*See, e.g.*, Pl.'s Dep. at 117–18 (describing her involuntary hospitalization as false imprisonment and a loss of liberty).) Second, no independent cause of action exists under the Mental Hygiene Law except claims over the confidentiality of medical records, which is not at issue here. *Dunkelberger v. Dunkelberger*, No. 14–CV–3877 (KMK), 2015 WL 5730605, at *22 n.13 (S.D.N.Y. Sept. 30, 2015).

The Court will first consider the County Defendants' motion for summary judgment, addressing the federal law claims and the state law claims in turn.

A. The County Defendants

1. Federal Law Claims

Under federal law, the remaining claims are for false arrest and conspiracy under Section 1983.

   a. False Arrest

McCarthy argues that (1) the Officers lacked probable cause to transport her to a hospital, and (2) the Officers are not entitled to qualified immunity. For the reasons set forth below, the Court finds that there are material issues of disputed fact that preclude summary judgment on the Section 1983 false arrest claim as to the County Defendants, including the issue of qualified immunity.

Section 1983 prohibits "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of state law. 42 U.S.C. § 1983. But Section 1983 does not create substantive rights; instead, it provides a procedure to vindicate rights established elsewhere. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Under Section 1983, a false arrest claim derives from the Fourth Amendment's prohibition against unreasonable searches and seizures. *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). As a threshold matter, it is undisputed that McCarthy was "seized" within the meaning of the Fourth Amendment. *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (stating that an involuntary hospitalization is tantamount to an arrest).

To withstand summary judgment on a false arrest claim, McCarthy needs to show a genuine issue of material fact on four elements: "'(1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). The fourth element is the only one in dispute for purposes of the motion. With respect to this element, New York law provides that a police officer "may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.41.

As the County Defendants correctly argue, probable cause is a complete defense to a false arrest claim. *See Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (collecting cases). In analyzing this defense, the Court evaluates "the totality of the facts and circumstances alleged to have been known to officers at the time of plaintiff's mental health arrest." *Id.* at 623.

The Officers assert that they hospitalized McCarthy because her actions and statements corroborated what they learned from school officials—namely, that she threatened to hurt

6

herself. (Amodeo Dep. at 68–69; Stassi Dep. at 65, 84.) However, if a reasonable jury accepted McCarthy's version of events, it could conclude that the Officers lacked probable cause because she never threatened to kill herself and was acting properly at her residence, and the Officers ignored Assistant Principal Higgins' statements that McCarthy was calm at the school. In other words, there are genuine issues of fact as to whether, at the time of her detention and hospitalization, McCarthy appeared mentally ill and whether she conducted herself in a manner likely to result in serious harm to herself or someone else. *See* N.Y. Mental Hyg. Law § 9.41.

The County Defendants argue that, even if the Officers lacked probable cause, they are entitled to qualified immunity. As the Supreme Court recently affirmed, "[q]ualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). Even if a police officer lacked probable cause, he is still "entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). "A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.*

In light of the evidence, a reasonable jury could conclude that the Officers' assessment of McCarthy was objectively unreasonable, and that no officer of reasonable competence could find otherwise. Viewing the facts in a light most favorable to McCarthy, a rational jury could find that Officers Stassi and Amodeo ignored Assistant Principal Higgins' statements about McCarthy being calm and effectively made a decision to arrest her upon arrival at the sister's house. This evidence, together with McCarthy's account (including that she never threatened to kill herself when the officers arrived at her residence) and the three-hour gap between the school incident and the Officers' in-person evaluation, creates material issues of disputed fact as to whether there was arguable probable cause and precludes summary judgment on the issue of qualified immunity. Thus, summary judgment is denied on the false arrest claim against Officers Stassi and Amodeo.[7] However, summary judgment is granted for the County because "a municipal defendant cannot be held vicariously liable under § 1983 on a *respondeat superior* theory."

---

[7] However, the Officers may raise the qualified immunity issue with the Court at trial. In other words, in order to determine the availability of the qualified immunity defense in this case at trial, the Court is prepared to follow the procedures set forth by the Second Circuit in *Zellner v. Summerlin*, 494 F.3d 344, 367-68 (2d Cir. 2007). Specifically, although "the ultimate question of whether it was objectively reasonable for [defendants] to believe that [their] conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court," *id*. at 367, the jury must first "resolve[] any disputed facts that are material to the qualified immunity issue," *id*. at 368. Further, "[t]o the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question." *Id*. (citations omitted) (noting that "if the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding"). In particular, "'the jury should decide these issues on special interrogatories.'" *Id*. (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990)). Once the jury has determined these factual issues, the Court will—if necessary—afford defendants an additional opportunity to renew their motion with respect to qualified immunity.

*Kraft v. City of New York*, 696 F. Supp. 2d 403, 417 (S.D.N.Y. 2010).[8]

b. Conspiracy

On a Section 1983 conspiracy claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).[9]

Elaborating on that standard, the Second Circuit requires "more than 'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights.'" *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)).

The conspiracy claim is barred by the intracorporate conspiracy doctrine, which provides "that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his employment, are legally incapable of conspiring together." *Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 196 (E.D.N.Y. 2006). Although the Second Circuit "has not yet determined its applicability to Section 1983 conspiracy claims," district courts have applied the doctrine in this context. *See, e.g.*, *Hicks v. City of New York*, 232 F. Supp. 3d 480, 497 (S.D.N.Y. 2017). This Court also has concluded that this doctrine applies to Section 1983 claims. Here, the uncontroverted evidence indicates that the Officers acted independently and without direction from the School Defendants. (Amodeo Dep. at 67–68; Stassi Dep. at 86–87.) Because the Officers are employees of a single municipal entity and acted within the scope of their employment, the intracorporate conspiracy doctrine applies.[10]

---

[8] The parties briefed arguments for a municipal liability claim under Section 1983, but that cause of action is missing from the complaint. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Only two claims were filed under Section 1983: false arrest and conspiracy. The closest analogue is a negligent hiring, training, and supervision claim under New York State law. In any event, a municipal liability claim would not survive summary judgment. "To state a *Monell* claim for official or municipal violation of constitutional rights, a plaintiff must adequately plead an official policy or custom that resulted in the violation alleged." *Arroyo v. City of New York*, 683 F. App'x 73, 75 (2d Cir. 2017) (summary order). In the instant case, the record contains no evidence of a municipal-wide policy or custom, let alone one linked to the Officers' actions. *See Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). To the extent McCarthy argues a failure to train theory of municipal liability under Section 1983, there is insufficient evidence in the record from which a rational jury could find that any lack of training caused the alleged constitutional violation in this case. Thus, summary judgment is warranted on any municipal liability claim brought under Section 1983.

[9] In her opposition briefs, McCarthy construed her conspiracy claim under Section 1985(3), but the complaint asserts the cause of action under Section 1983. This revision lacks any force because "[a] summary judgment opposition brief is not a substitute for a timely motion to amend the complaint." *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003). In any event, even if the Court construed the claim as one under Section 1985(3), McCarthy failed to present evidence of discriminatory treatment. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (requiring "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions" under Section 1985(3)) (citation omitted).

[10] To the extent McCarthy argues that a conspiracy existed between the Officers and the School Defendants, the Court concludes that, even construing the evidence most favorably to plaintiff, no rational jury could find such a conspiracy existed in this case because, as discussed *infra*, there is no evidence that the School Defendants encouraged the arrest or

Accordingly, the Court grants summary judgment on the Section 1983 conspiracy claim against the County Defendants.

2. State Law Claims

McCarthy asserts state law claims under the doctrine of supplemental jurisdiction. As for the County Defendants, she raises claims for false imprisonment, assault, and negligence. She also asserts an additional claim for negligent hiring, training, or supervision against the County itself.

a. False Imprisonment

As discussed earlier, "the tort of false arrest is synonymous with that of false imprisonment." *Posr*, 944 F.2d at 96. However, unlike its federal counterpart, New York law permits supervisor liability for municipalities under a theory of *respondeat superior*. *Sankar*, 867 F. Supp. 2d at 313. "This applies even to discretionary actions by police officers where, as here, genuine issues of material fact exist as to whether there was probable cause for arrest." *See id.* Thus, for the same reasons discussed in the false arrest analysis, the Court denies summary judgment on the false imprisonment claim against Officers Stassi and Amodeo, as well as Nassau County.

b. Assault

Under New York law, "an 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). "The plaintiff must show that the defendant intended either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact." *Wright v.*

---
engaged in any type of joint action with the County Defendants.

*Musanti*, No. 14-cv-8976 (KBF), 2017 WL 253486, at *5 (S.D.N.Y. Jan. 20, 2017) (citation omitted). "Although a plaintiff need not prove actual contact, she must allege some physical menace against her body." *Id.*

The record lacks any evidence that the Officers intended to inflict harm or to arouse the specter of harm. First, the only alleged physical contact came between McCarthy and Officer Stassi, who escorted McCarthy to the ambulance with "his hand on [her] elbow" in a "gentlemanly" fashion. (Cnty. 50-h Hr'g at 54–55.) Second, McCarthy describes the threat of harm as the "emotional upsetment [sic] of being locked in the psychiatric unit." (Cnty. 50-h Hr'g at 71; Pl.'s Dep. at 118.) Based on these allegations, no rational juror could find that the Officers acted in a threatening or menacing matter sufficient to establish liability for assault. *See Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (affirming dismissal of assault claim because there were no allegations that "an officer acted in a way that placed [the plaintiff] 'in fear of imminent harmful or offensive conduct'").

Accordingly, the assault claim does not withstand summary judgment.

c. Negligence

To survive summary judgment on a negligence claim, a plaintiff must establish "(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." *Field Day, LLC v. Cnty. of Suffolk*, No. 04–CV–2202 (DRH)(WDW), 2005 WL 2445794, at *23 (E.D.N.Y. Sept. 30, 2005). However, here, any "offensive bodily contact with the plaintiff—if it occurred at all—was intentional and not negligent." *Dewitt v. Home Depot U.S.A., Inc.*, No. 10–CV–3319 (KAM), 2012 WL

4049805, at *11 (E.D.N.Y. Sept. 12, 2012); *see also Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) ("When a plaintiff asserts . . . assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."). McCarthy alleges, for example, that the County Defendants "intentionally and recklessly" infringed her rights. (*See, e.g.*, Compl. ¶ 135.) Thus, her negligence claim fails as a matter of law, and summary judgment is granted.

### d. Negligent Hiring, Training, or Supervision

To assert a claim for negligent hiring, training, or supervision, a plaintiff must allege negligence with three additional requirements: "'(1) the tort-feasor and the defendant were in an employee-employer relationship, (2) the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Soliman*, 2017 WL 1229730, at *12 (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam)). However, where, as here, "employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law." *See Rowley v. City of New York*, No. 00 Civ. 1793(DAB), 2005 WL 2429514, at *13 (S.D.N.Y. Sept. 30, 2005) (collecting cases). As is plain from the record, Officers Stassi and Amodeo acted within the scope of their employment, and McCarthy concedes as much. (Compl. ¶ 35.) Thus, the County is entitled to summary judgment on this claim.

## B. The School Defendants

Next, the Court will address the School Defendants' motion. The Court will first address plaintiff's discrimination claims and then turn to McCarthy's remaining claims and the County Defendants' cross-claim for indemnity.

### 1. The Discrimination Claims

McCarthy asserts three discrimination claims against the School Defendants: (1) age discrimination under New York State Executive Law, (2) race discrimination under New York State Executive Law, and (3) violation of the Equal Protection Clause of the Fourteenth Amendment. McCarthy also asserts two additional claims against the District itself: (1) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, and (2) race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

Having reviewed the record, the Court concludes that there is no evidence from which a rational jury could find that the School Defendants were motivated by any type of discriminatory intent. At oral argument, McCarthy's lawyer conceded that he could point to no evidence in the record of discrimination. Thus, the Court grants summary judgment in the School Defendants' favor on the discrimination claims.[11]

### 2. The Remaining Claims

The remaining claims against the School Defendants are for false arrest, false imprisonment, conspiracy, and assault.[12]

---

[11] In light of this conclusion, the Court need not address whether McCarthy suffered any adverse employment actions.

[12] McCarthy withdrew her claims for negligence and negligent hiring, training, and supervision against the School Defendants.

As for the false arrest and false imprisonment claims, it is uncontroverted that the School Defendants were not present when McCarthy was arrested. When a defendant is a private actor and not an arresting officer, a plaintiff must show that the defendant "instigated" the arrest. *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997). Accordingly, "'a plaintiff must show that the defendant took an active role in the arrest . . . such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.'" *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015) (summary order) (quoting *Lowmack v. Eckerd Corp.*, 303 A.D.2d 998, 999 (2003)). However, where, as here, private actors merely furnished information leading to an arrest, liability does not attach, and summary judgment is appropriate. *See Kraft*, 696 F. Supp. 2d at 421–22.

As illustrated by Officer Amodeo's sworn testimony, law enforcement made an independent determination to arrest plaintiff:

> Q. Now, it was your job in going [to the sister's house] to make an independent assessment as to whether or not [McCarthy] was a threat, right?
>
> A. Yes.
>
> * * *
>
> Q. So when you arrived at the residence, was it your intent that she be transported to the hospital, without even knowing what your interaction would be?
>
> A. No.

(Amodeo Dep. at 67–68.) Officer Stassi provided similar testimony:

> Q. Would it be fair to say that you were going to conduct your own investigation of the situation before you and your partner made a final determination as to whether or not Ms. McCarthy needed to go to the hospital?
>
> A. Yes.
>
> * * *
>
> Q. Did anyone at the district ever request that you bring Ms. McCarthy to the hospital?
>
> A. No, sir.

(Stassi Dep. at 86–87.) Indeed, McCarthy presented no evidence that the School Defendants "instigated" the arrest by asking or encouraging the Officers to act. *See King*, 111 F.3d at 257 ("When police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment . . . ."). Instead, the decision to contact the police was made by Dr. Hazelton, and both Principal Braswell and Assistant Principal Higgins followed the chain-of-command. However, there is no evidence of encouraging an arrest, and the Officers detained and hospitalized plaintiff based upon their own interactions with plaintiff at the residence. The Court, thus, grants summary judgment on the false arrest and false imprisonment claims against the School Defendants.

The assault and conspiracy claims against the School Defendants also cannot survive summary judgment. The School Defendants were not personally involved in McCarthy's arrest, nor did plaintiff present evidence that she feared any harmful or offensive contact

by the School Defendants. Accordingly, summary judgment is granted in favor of the School Defendants on the assault and conspiracy claims.

3. The County Defendants' Cross-Claim

Finally, the School Defendants move to dismiss the County Defendants' cross-claim for indemnity. The Court dismisses the cross-claim because the uncontroverted evidence in the record, including the Officers' own testimony, demonstrates that the Officers made their own assessment as to whether to detain and hospitalize McCarthy based upon their own observations at the residence, independent of the School Defendants. Thus, the cross-claim against the School Defendants must be dismissed.

IV. CONCLUSION

For the foregoing reasons, the Court grants the School Defendants' motion for summary judgment in its entirety and dismisses the County Defendants' cross-claim. (ECF No. 28.) The County Defendants' motion for summary judgment is granted in part and denied in part. (ECF No. 33.) The following claims will proceed to trial: (1) false arrest under Section 1983 against Officers Stassi and Amodeo, and (2) false imprisonment under New York law against all of the County Defendants. Finally, the Clerk of the Court is directed to terminate Nassau County Police Department and Matthew Field as defendants in this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 19, 2017
     Central Islip, New York

* * *

Plaintiff is represented by Alan E. Wolin, Wolin & Wolin, Esqs., 420 Jericho Turnpike, Suite 215, Jericho, New York 11753.
The School Defendants are represented by Gerald Stephen Smith, Silverman and Associates, 445 Hamilton Avenue, Suite 1102, White Plains, New York 10601.

The County Defendants are represented by Liora M. Ben-Sorek, Nassau County Attorney's Office, One West Street, Mineola, New York 11501.